UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARYANNE LEVESQUE,
      Plaintiff,               :       CIVIL ACTION
                                            NO. 3-01-CV-1325 (DJS)
V.                                 :

TOWN OF VERNON, LAURENCE R.      :
SCHAFFER, JOHN VAN OUDENHOVE
and DANIEL SULLIVAN,
      Defendants.           :       FEBRUARY 20, 2004

DEFENDANTS' MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(e) and D. Conn. L. Civ. 56(a), the Defendants,

The Town of Vernon (the "Town"), Laurence R. Schaffer, John Van Oudenhove and

Daniel Sullivan, hereby submit this memorandum of law in support of the Defendants'

motion for summary judgment on all counts of the Complaint dated July 13, 2001.

## I.     INTRODUCTION

In August 1995, the Plaintiff commenced her employment with the Town as a

part-time Assessment Technician.  She was appointed to the position of full-time

Assessment Technician in April 1996.  The Plaintiff's employment history is marked by

interpersonal tensions with co-workers, frequent outbursts, complaints regarding her

own personal concerns, and expressing her opinion that other employees should be

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

terminated, and other complaints, which all relate to unprotected private conduct.  The Plaintiff received numerous verbal and written warnings regarding her behavior at least as of June 1999, which placed the Plaintiff on notice that she should behave in the office in a professional manner.

Despite repeated warnings regarding her behavior and the opportunity to be heard at pre-termination hearing on March 8, 2001 and a second hearing on March 12, 2001, the Plaintiff maintains her remarkable claim that the Defendants violated her civil rights, denied her due process and retaliated against her for speaking out on matters of public concern, among other claims.  For the reasons set forth herein, the Plaintiff can demonstrate no genuine issue of fact to support her claims and summary judgment must enter in favor of the Defendants on all counts of the Complaint dated July 13, 2001.

## II.    FACTUAL BACKGROUND

The Town utilizes a classified civil service system of employment based on merit. See Charter of the Town of Vernon, Chapter XIV, p. 43, (hereinafter the "Charter"), attached hereto as **Exhibit 1**. According to the Town's Charter, classified civil service employees are selected on the basis of merit, and may not be terminated except for cause, reduction in force due to necessary economics, or abolition or consolidation of positions by reorganization.  Id., pp. 43-44. Pursuant to the Charter, the Town has adopted Personnel Rules & Regulations, which constitute a merit system by which the Town seeks to treat employees and candidates for employment in a fair and impartial

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

manner based on their ability and fitness to perform work for the Town, free of personal and political considerations. See Town of Vernon Personnel Rules & Regulations, Foreword, p. iv., (hereinafter the "Personnel Rules"), attached hereto as **Exhibit 2**.  The Personnel Rules provide comprehensive rules and regulations regarding the employment of the Town's employees including compensation, leave, recruitment, selection and appointment of employees, grievance procedures, conduct of employees, and disciplinary actions, including termination, among others.  Id.

The Plaintiff commenced her employment with the Town in a part-time clerical position in the office of the Town Assessor, effective August 7, 1995. See Letter to Maryann Levesque, dated July 20, 1995, attached hereto as **Exhibit 3**.   On April 3, 1996, the Plaintiff was appointed to the position of Assessment Technician, effective April 15, 1996.  See Letter to Ms. Levesque, dated April 3, 1996, attached hereto as **Exhibit 3**.  The Plaintiff was compensated at an annual salary of $21, 858.20 for a thirty-five hour work week, which was grade 7, step 1 of the Town's Position Classification and Compensation Plan. See Id.  The Town specifically informed the Plaintiff that she would be working in a nine (9) month probationary period, and upon completion of this probationary period, she would be accorded permanent employee status in her position. See Id.  A copy of the Town's position description for an Assessment Technician Position, effective December 1, 2000, is attached hereto as **Exhibit 4**.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## A.     The Plaintiff's Alleged Union Activity

The Plaintiff alleges that in Spring 1997, the Association of Federal, State, County and Municipal Employees ("AFSCME") initiated a campaign to unionize the Town's employees.  Complaint, ¶ 18.  The Plaintiff alleges that the Town's employees were divided into two groups, professional/technical and clerical.  Id.  The Plaintiff further alleges that initially, her position was considered professional/technical, along with the Assessor position. Id.  The Plaintiff alleges that before the unionization votes, all Assessment Technician positions were switched to the clerical group. Complaint, ¶ 19.  The Plaintiff alleges that the professional/technical group voted for unionization under AFSCME, while the clerical group did not.  Id.    The Plaintiff alleges that after that vote, the Plaintiff actively sought unionization of the clerical staff with another labor organization, which was ultimately unsuccessful.  Complaint, ¶ 20.  The Plaintiff claims that the Town and Laura Knipple, a employee of the assessor's office, opposed the Plaintiff's organization efforts, which were ultimately unsuccessful.  Id.

The Plaintiff claims that after she engaged in these activities, the problems began which are reflected in her Complaint and her documents.  See Plaintiff's Responses to Defendant's Interrogatories and Requests for Production, dated March 26, 2002, Interrogatory No. 8, attached hereto as **Exhibit 5**.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**B.**     **The Plaintiff's Employment History and Interpersonal Difficulties at the Town.**

The Plaintiff's interpersonal difficulties with other employees began to surface during her employment with the Assessor's Office.  Numerous memoranda and notes to and between her supervisors and co-workers indicate that the Plaintiff was an inquisitive individual who continuously attempted to micromanage her fellow employees and even her supervisors.  She also appeared to be overly emotional, and cried in the office frequently.  Although the Plaintiff appeared to have personality problems with many of her co-workers, even in the early years of her employment, the Plaintiff especially conflicted with Laura Knipple, an Assessment Technician who was appointed in December 1999. See Complaint, ¶ 16.  The Plaintiff continually states in different memoranda and notes submitted to the Town and the individual Defendants that Ms. Knipple was the source of her problems.

Interpersonal tensions between the Plaintiff and Ms. Knipple surfaced almost immediately.  The first such document memorializing the Plaintiff's conflict with Ms. Knipple was sent to Human Resources Officer, Daniel Sulllivan by the Plaintiff.  See Interoffice Memorandum dated April 5, 1999, attached hereto as **Exhibit 6**.  In her memo, the Plaintiff complained that "Laura was giving [her] the silent treatment" and that Laura had "told [her] in a rude and abrupt manner, not to interrupt her when she was with a tax payer." Id.  By memo dated November 17, 1999, Ms. Knipple complained to the Town of daily harassment by the Plaintiff.  The memo states the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff refused to wait on customers, constantly checked on Ms. Knipple to see what she was doing, listened in or her conversations and was disruptive of the entire department.  See Memorandum to Jack Van Oudenhove from Laura Knipple, dated November 17, 1999, attached hereto as **Exhibit 7**.

On April 27, 2000, Ms. Knipple sent a memo to Town Assessor, Mr. Jack Van Oudenhove, copied to Mr. Sullivan, stating she "can no longer work with Maryann without a manager or supervisor in this department … [and she was] not going to put up with her constant harassment." See Interoffice Memorandum to Jack Van Oudenhove, dated April 27, 2000, attached hereto as **Exhibit 7**.  Ms. Knipple described the situation as "unsettling" and noted she was "not sleeping" because of the conditions in the office. See Id.  In this memo, Ms. Knipple also requested a leave of absence for stress-related health reasons.  See Id.   Other employees complained about the Plaintiff's inappropriate office behavior.  On January 1, 2000, Suzanne Aregood sent a memorandum to Mr. Van Oudenhove, copied to Mr. Sullivan, stating that the Plaintiff had been going through her desk and that this "needs to stop." See Interoffice Memo, dated January 14, 2000, attached hereto as **Exhibit 8**.

The Town had sent numerous memoranda to the Plaintiff regarding her inappropriate behavior.  These memoranda from the Town and the individual Defendants highlight the Plaintiff's controlling behaviors and her refusal to follow directions from her supervisors.  In response, the Plaintiff had submitted numerous memoranda to the Town and the individual defendants all of which related to her

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

personal problems and focus on her belief that she was just doing her job and that she did not have any problems with the Town prior to Ms. Knipple's hire.   The Plaintiff's memoranda lack any substantive complaints regarding any matters of public concern, but rather focus on her own personal problems such as lunch breaks, sick time, office behavior, absences, and work performance, among other personal problems.   Among these letters and memos are the following:

On June 10, 1999, Mr. Van Oudenhove and Mr. Sullivan sent the Plaintiff a letter outlining problems, including leaving for lunch early, copying papers from other employees' desks without the knowledge of that person, leaving meetings with supervisors before the conversation is over, and discourteously dealing with employees. See Letter to Ms. Levesque dated June 10, 1999, attached hereto as **Exhibit 9**.  The letter told the Plaintiff "in general, you must be more cooperative in dealing with Jack, Jane, and Laura." Id.  On June 15, 1999, Mr. Sullivan sent the Plaintiff a second letter indicating that it was her responsibility to inform her supervisor, Mr. Van Oudenhove, of her absences and the reason for her absences, which the Plaintiff had not done. See Letter to Ms. Levesque, dated June 15, 1999, attached hereto as **Exhibit 9**.  The letter also indicated that if a personal problem was the cause of the Plaintiff's recent absence, she could be referred to the employee assistance program.  See Id.

The Plaintiff replied to these letters by denying her actions were problematic. See Letter to Lawrence Shaffer dated July 20, 1999, attached hereto as **Exhibit 10**.   The Plaintiff requested a separate work area from Ms. Knipple, whom the Plaintiff claimed

- 7 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

she was "afraid of" and who was "bullying" her.  See Id., p. 3.  The Plaintiff concluded

her letter with the accusation "it seems funny neither Mr. Van Oudenhove or Ms.

Grigsby (another town employee) had a problem with me until Ms. Knipple arrived."  Id.

On November 4, 1999, Mr. Van Oudenhove sent a letter to the Plaintiff

reprimanding her from being away from her desk for extended periods of time.  See

Letter to Ms. Levesque, dated November 4, 1999, attached hereto as **Exhibit 9**.  The

Plaintiff replied to Mr. Van Oudenhove in writing, claiming she always told other

employees when she is going to be away from her desk, and apparently they were "not

listening" to her. See Memorandum to Mr. Van Oudenhove, dated November 5, 1999,

attached hereto as **Exhibit 10**.  Again, the Plaintiff claimed "since Laura [Knipple] has

come into the office there seems to be problems. You never seemed to have any

problems with me before she came, I am sick of being your punching bag."  Id.

On November 17, 1999, Mr. Van Oudenhove sent the Plaintiff another

memorandum in which he told the Plaintiff she was "still looking over peoples shoulders

and felt [she was] in a supervisory capacity.  Again, this has got to stop. You need to do

the work that is assigned to you and not watch for other people."  See Memorandum to

Ms. Levesque, dated November 17, 1999, attached hereto as **Exhibit 9**.  On November

17, 1999, Mr. Sullivan sent a memo to Mr. Van Odenhove regarding the referral of an

Employee Assistance Program ("EAP") Counselor to meet with the Plaintiff and Ms.

Knipple to discuss office communication and working effectively with fellow workers.

See Memo re: EAP Counselor, dated November 17, 1999, attached hereto as **Exhibit**

- 8 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**9**.  As such, Mr. Sullivan sent the Plaintiff a memorandum regarding the referral of the EAP Counselor in hopes that the counselor will provide suggestions on how to resolve the conflict.  See Memo to Maryann Levesque, dated November 18, 1999, attached hereto as **Exhibit 9**.

Mr. Sullivan sent the Plaintiff two subsequent memoranda regarding the referral to the Employee Assistance Program dated December 2, 1999 and December 13, 1999.  Copies of these memoranda are attached hereto as **Exhibit 9**.  Mr. Sullivan informed the Plaintiff that the Town made this referral because there is friction between employees in the Assessor's Office characterized by over-reaction to comments that are viewed as criticism, variations in cooperation, complaints from co-workers, resentments, irritability, and avoidance of associates.  You are one of the two employees who have told us that there is difficulty working together who have been referred to our program." Id.

On January 18, 2000, Mr. Sullivan sent the Plaintiff a memorandum regarding her failure to follow instructions.  See Memorandum to Maryann Levesque, dated January 18, 2000, attached hereto as **Exhibit 9**.  Mr. Sullivan informed the Plaintiff that he had learned the Plaintiff had deleted account records prematurely and that because of her actions, the Town no longer has an accounting of records that have been deleted from the original state DMV tape.  See Id.  Mr. Sullivan informed the Plaintiff, "[y]our failure to follow specific instructions is direct disobedience and give the impression that

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

you do not understand the purpose of some of the work that we do.  We must leave a

clear paper trail [sic] with these records." Id.

  The Plaintiff responded to Mr. Van Oudenhove by letter dated January 18, 2000,

stating that she and Mr. Van Oudenhove "had a fairly good working relationship until

Ms. Knipple became part of the office." See Letter to Mr. Van Oudenhove, dated

January 18, 2000, attached hereto as **Exhibit 10**.   The Plaintiff disputed an earlier

reprimand by informing Mr. Van Oudenhove he "didn't grasp the idea" she was trying to

explain to him, and disputes an error in the office's grand list attributed to her. See Id.

The Plaintiff also informed her supervisor that she "will no longer be a victim to your

sarcasm and absurd behavior," and that the "harassment I receive from Laura and the

temp Sue is unworthy." Id., p. 2.  The Plaintiff further opined, "Ms. Aregood should be let

go." Id.  On January 23, 2000, the Plaintiff complained to Mr. Schaffer in writing

regarding Mr. Van Oudenhove. See Letter to Laurence Schaffer, dated January 23,

2000, attached hereto as **Exhibit 10**.   The Plaintiff indicated that, "Mr. Van Oudehove is

very dictatorial and governing on nonsense issues." See Id.  Despite the numerous

written reprimands that pre-date this letter, the Plaintiff claimed "I have at no time ever

received a verbal or written complaint concerning any of the work that I do in the office."

Id.

  On February 8, 2000, Mr. Van Oudenhove sent the Plaintiff a letter confirming

that her "interferences" in the office have been reported to him as discourteous and

disrespectful to her fellow employees. See Letter to Maryann Levesque, dated February

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

8, 2000, attached hereto as **Exhibit 9**.  Mr. Van Oudenhove informed the Plaintiff that

he expected her to behave in a professional manner, keep mistakes within the office,

ask for permission to work overtime, and not take work home. See Id.  On February 11,

2000, Mr. Van Oudenhove sent the Plaintiff a memo indicating that on November 19,

1999, she had been informed not to put in any comp time or overtime without

permission. See Memorandum to Maryann Levesque, dated February 11, 2000,

attached as **Exhibit 9**.   The memorandum indicates that the Plaintiff had submitted

extra time anyway, since Mr. Van Oudenhove was "unavailable."  See Id.

  On March 9, 2000, Mr. Shaffer responded to the Plaintiff's January 23, 2000

letter.  A copy of Mr. Shaffer's March 9, 2000 letter is attached hereto as **Exhibit 9**.  Mr.

Schaffer suggested the Plaintiff comply with her supervisor's instructions. See Id.  He

further told the Plaintiff that she was "not exclusively responsible for the relationship

between you and your co-workers.  However, you do not appear to make a contribution

to a resolution." Id.  Mr. Shaffer further noted that the Plaintiff refused to participate in

the EAP meetings since she was unable to tape record the meetings with the EAP

counselor.  See Id.

  On March 16, 2000, Mr. Sullivan sent the Plaintiff a five (5) page memorandum

summarizing the Plaintiff's problems with her behavior in the office and expectations.  A

copy of this memorandum is attached hereto as **Exhibit 11**.  Mr. Sullivan summarized

the events regarding the Plaintiff's behavior and performance from March 30, 1999

through January 23, 2000.  See Id.  Mr. Sullivan noted that during the past several

- 11 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

months, the Plaintiff has been very disruptive and have had difficulty in getting along with her supervisors and fellow employees.  See Id., p. 4. Mr. Sullivan informed the Plaintiff that the memorandum would not be placed in the Plaintiff's personnel file at that time, because he believed that the Plaintiff had the ability to identify the necessary changes now that they had been identified for her. See Id., p. 5.

Notwithstanding cumulative warnings set forth in this letter, Mr. Van Oudenhove sent the Plaintiff a subsequent letter on April 18, 2000 regarding a further warning on cooperation.  See  Letter to Maryann Levesque from Jack Van Oudenhove, dated April 18, 2000, attached hereto as **Exhibit 12**. Mr. Van Oudenhove informed the Plaintiff that she was not being open or cooperative regarding the discussion of office procedure issues.  Mr. Van Oudenhove specifically informed the Plaintiff "[i]f you do not follow my instruction by following procedure and helping in training our newer employees, you will be subject to disciplinary action including warnings, suspensions, and eventually dismissal." Id.

### C.    The Plaintiff's Grievances

On April 19, 2000, the Plaintiff filed a grievance regarding Mr. Van Oudenhove's memorandum warning her on cooperation.  See Memo to Mr. Shaffer from Maryann Levesque, attached as **Exhibit 13**.  On April 20, 2000, Mr. Shaffer responded to the Plaintiff and informed her to follow the Grievance Procedure as outlined on page 30, Section 12.3 of the Personnel Rules.  See Memo to Maryann Levesque, dated April 20, 2000, attached as **Exhibit 13; Exhibit 2, p. 30.**  On May 5, 2000, Mr. James M.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Luddecke, Finance Officer and Treasurer, responded to the Plaintiff's grievance pursuant to Step 2, Section 12.3 of the Personnel Rules & Regulations.  See Memorandum dated May 5, 2000, attached as **Exhibit 14**.  Mr. Luddecke's response to the Grievance addressed the issues of Title Transfers, Correction/Certificate Numbers on License Plate Receipts and Cooperation – Office Procedures and Training.  See Id. Mr. Luddecke noted that the Plaintiff again expressed reluctance to training Ms. Knipple. See Id.  Mr. Luddecke specifically informed the Plaintiff that it is imperative to openly discuss office procedures and to follow instructions.  Id.

On April 27, 2000, the Plaintiff was notified of the scheduling of her Performance Evaluation.  See Memo dated April 27, 2000, attached as **Exhibit 15**.  The Plaintiff was informed that if her evaluation was satisfactory, she will be eligible to advance from Step/Grade N5-2 to Step/Grade N5-3, with an increase of her salary from $26,809.00 to $27,755.00.  See Id.  The Plaintiff was denied her periodic step increase in pay, in part, due to concerns over her behavior, and because a reprimand had been issued after meeting with Mr. Schaffer in July 2000.  See Memo to Maryann Levesque, dated November 7, 2000; Memo to Mary Ann Levesque from David A. Wheeler, dated August 31, 2000, attached as **Exhibit 16**.

By letter dated November 21, 2000, the Plaintiff grieved this decision and expressed her opinion she was being subjected to abuse of authority in the form of "discriminatory conduct, unequal treatment and harassment."  See Letter to Mr. Shaffer dated November 21, 2000, attached hereto as **Exhibit 17**.  Mr. Shaffer denied the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Plaintiff's grievance by Memorandum dated November 27, 2000 for the reason that he did not find any evidence of discriminatory conduct, nor did her letter state that she had been discriminated against on the basis of a discriminatory classification. See Memorandum to Maryann Levesque, dated November 27, 2000, attached as **Exhibit 17**. Mr. Shaffer noted that the Plaintiff "spent a great deal of time in [her] letter focusing on whether Laura Knipple has received a letter of reprimand. Ms. Knipple's performance is not, nor has it been, the issue that has driven the concerns expressed to you relative to your performance." Id.

On January 3, 2001, the Plaintiff again complained about her treatment compared to other employees, Ms. Knipple in particular. See Letter to Mr. Shaffer, dated January 3, 2001, attached as **Exhibit 18**. The Plaintiff's memorandum again focused on her own personal problems with Ms. Knipple, referenced the Personnel Rules Section 13.6 regarding sexual harassment, and is completely devoid of any claims regarding speaking out on matters of public concern. See Id. By February 2001 the Plaintiff was causing disturbances in the office once more. See Memo to Mr. Shaffer from Mr. Van Oudenhove, dated February 2, 2001, attached as **Exhibit 19**. In this memorandum, Mr. Van Oudenhove wrote to Mr. Schaffer seeking employment action against the Plaintiff because of her continued poor attitude towards her co-workers. See Id. Mr. Van Oudenhove stated in the memorandum that the Plaintiff "appears to have a persecution complex as she is always taking issue with the most mundane task or directive. This behavior has been ongoing over the last several years



One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

despite numerous verbal and written warnings." Id. Mr. Van Oudenhove concluded that the Plaintiff "is not suited for this position based on several years of well-documented episodes. It is my recommendation that she be removed from this office immediately." Id.

In February 2001, the Plaintiff sent a letter to Mr. Shaffer, which set forth her complaints regarding the her use of sick time, notice to her regarding overtime scheduling under the Personnel Rules, and her request for reconsideration of the denial of her step increase. See Letter to Mr. Shaffer, dated February 5, 2001, attached hereto as **Exhibit 20**. This letter again sets forth the Plaintiff's complaints regarding her own personal concerns and her own problems with Ms. Knipple and does not set forth any matters regarding public concern. See Id.

**D.    The Plaintiff's Termination Process.**

Due to the Plaintiff's failure to respond to the Town's continued efforts to attempt to correct her behavioral problems with other employees, which dates back to at least June 1999, the Town had made the decision to terminate the Plaintiff in December 2000. See Unemployment Compensation Commission Fact Finding Report, dated April 30, 2001, attached hereto as **Exhibit 21**. The Town, however, had delayed the Plaintiff's termination until after the holidays and her termination was postponed until March 2001. Id. Initially, it appeared that the Plaintiff's personal problems had subsided, however, as demonstrated by Mr. Van Oudenhove's memo to Mr. Shaffer on February 2, 2001, the Plaintiff's problems had continued into February 2001. See

- 15 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

**Exhibit 19**.  On February 23, 2001, Mr. Van Oudenhove sent a memorandum to Mr.

Shaffer requesting to permanently remove the Plaintiff from the assessor's office staff.

<u>See</u> Memorandum to Mr. Shaffer, dated February 23, 2001, attached as **Exhibit 22**.

On March 8, 2001, Mr. Sullivan presented the Plaintiff with a written notice of a

"pre-termination hearing" to be held that evening.  <u>See</u> Letter to Maryann Levesque,

dated March 8, 2001, attached hereto as **Exhibit 23**.  The letter advised the Plaintiff that

the Town was considering terminating her employment and that she would have an

opportunity at the hearing to present reasons why she should not be terminated. <u>See</u> <u>Id.</u>

On March 12, 2001, Mr. Schaffer, Mr. Sullivan, and Ms. Herold met with the Plaintiff to

discuss her termination.  Complaint ¶¶ 32, 34; Shaffer Affidavit ¶ 33, attached hereto as

Exhibit 29.  Following the March 12, 2001 meeting, Mr. Shaffer sent the Plaintiff a letter

to notify her that she was being dismissed from employment with the Town because of

continued uncooperative behavior, disruptive behavior, failure to follow supervisor's

instructions, leaving the office without permission and being unable to get along with

supervisors and co-workers. <u>See</u> Letter to Maryann Levesque, dated March 12, 2001,

attached hereto as **Exhibit 23**.  Mr. Shaffer's letter confirmed that the decision was

made after a pre-termination meeting held on March 8, 2001 and stated "[s]ince June of

1999, your supervisors have taken many corrective actions to notify you of problems

and to change your behavior, however there has been no change." <u>Id.</u>  Mr. Shaffer

informed the Plaintiff that she had the right to appeal this decision under Section 12,

Grievance Procedures of the Personnel Rules and Regulations.  <u>See</u> <u>Id.</u>

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

By memoranda dated March 15, 2001 and March 22, 2001, the Plaintiff appealed her termination decision to Mr. Luddeck and Mr. Van Oudenhove.  See Memoranda to Mr. Luddeck and Mr. Van Oudenhove, attached hereto as **Exhibit 24**.   The Plaintiff then met with Mr. Van Oudenhove to review her termination.  On March 30, 2001, Mr. Van Oudenhove sent the Plaintiff a letter acknowledging receipt of the Plaintiff's appeal of her termination, and indicating that he had reviewed the facts of this case, but determined to let the decision stand and denied the Plaintiff's grievance. See Letter to Maryann Levesque dated March 30, 2001, attached as **Exhibit 25**.   The Plaintiff thereafter appealed to Mr. Schaffer pursuant to the Town' grievance procedure, and met with Mr. Schaffer, Ms. Herold and per the Plaintiff's request, Town Council Member Diane Wheelock.  See Plaintiff's Grievance to Mr. Shaffer dated April 3, 2001; Letter to Maryann Levesque dated April 5, 2001; and Minutes re: grievance meeting dated April 10, 2001, attached hereto as **Exhibit 26**.

Following this meeting, Mr. Schaffer upheld the Plaintiff's termination by letter dated April 16, 2001. See Letter to Maryann Levesque, dated April 16, 2001, attached hereto as **Exhibit 27**.  The Plaintiff thereafter submitted a letter regarding her termination to the Town Council and requested an opportunity to communicate with the Council about her termination.  The Council has not complied with the Plaintiff's request. See Letter to Vernon Town Council, dated April 19, 2001, attached hereto as **Exhibit 28**; Complaint, ¶ 40.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

E.    <u>The Plaintiff's Civil Action.</u>

On July 13, 2001, the Plaintiff filed the present Eight Count, District Court

Complaint against the Town of Vernon, Laurence Shaffer, John Van Oudenhove and

Daniel Sullivan.  The Plaintiff alleges that the Defendants denied her due process in

violation of the 14th Amendment under 42 U.S.C. § 1983; retaliated against the Plaintiff

regarding her labor union activities in violation of the 1st Amendment under 42 U.S.C. §

1983; denied the Plaintiff equal protection regarding her exercise of protected rights in

violation of the 14th Amendment under 42 U.S.C. § 1983; retaliated against the Plaintiff

for her alleged reports of misconduct and/or abuse of authority in violation of Conn.

Gen. Stat. § 31-51m; that the Town breached its contract of employment with the

Plaintiff; that the individual defendant, Mr. Van Oudenhove deprived the Plaintiff of

liberty in violation of the 14th Amendment under 42 U.S.C. § 1983; and alleges common-

law defamation against Mr. Van Oudenhove.

III.    **STANDARD FOR SUMMARY JUDGMENT**

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits ... show that there is

no genuine issue as to any material fact and that the moving party is entitled to a

judgment as a matter of law."  Fed. R. Civ. P. 56 (c).  The burden is on the moving party

to show that no material facts are in dispute. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317,

323, 106 S. Ct. 2548 (1986).  Once the moving party has met its burden, the opposing

party must come forward with specific evidence that proves there is a genuine issue of

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ ʟʟᴘ

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

material fact for trial.  Dusanenko v. Maloney, 726 F.2d 82, 84 (2d Cir. 1984); Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505 (1986). A plaintiff faced with a

properly supported summary judgment motion "must do more than simply show that

there is some metaphysical doubt as to the material facts."  Matusushita Electric

Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348 (1986). Rather,

that plaintiff must come forth with evidence sufficient to allow a reasonable jury to find in

his favor.  Id.; Brown v. Henderson, 257 F.3d 246, 252 (2d. Cir. 2001).

Defenses based on qualified immunity are uniquely situated to being resolved on

summary judgment.  Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806 (1985).

This is because of

> the general costs of subjecting officials to the risks of trial--distraction of officials
> from their governmental duties, inhibition of discretionary action, and deterrence
> of able people from public service... There are special costs to "subjective"
> inquiries of this kind. Immunity generally is available only to officials performing
> discretionary functions. In contrast with the thought processes accompanying
> "ministerial" tasks, the judgments surrounding discretionary action almost
> inevitably are influenced by the decision maker's experiences, values, and
> emotions. These variables explain in part why questions of subjective intent so
> rarely can be decided by summary judgment. Yet they also frame a background
> in which there often is no clear end to the relevant evidence. Judicial inquiry into
> subjective motivation therefore may entail broad-ranging discovery and the
> deposing of numerous persons, including an official's professional colleagues.
> Inquiries of this kind can be peculiarly disruptive of effective government.

Harlow v. Fitzgerald, 457 U.S. 800, 816-17 102 S.Ct. 2727 (1982).  In addition, the

question of "[w]hether an employee's speech addresses a matter of public concern and

is thus protected under the First Amendment is one of law, not fact."  (internal quotation

marks omitted, citations omitted.) Hale v. Mann, et al., 219 F.3d 61, 70 (2d Cir. 2000).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

IV.    **LAW AND ARGUMENT**

A.    **THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNT ONE ALLEGING FOURTEENTH AMENDMENT DENIAL OF DUE PROCESS.**

In Count One, the Plaintiff alleges that acting under color of law, the Defendants failed to provide her with adequate notice of the charges against her, nor a meaningful opportunity to be heard prior to her termination.  Complaint, ¶ 44.  As such, the Plaintiff claims that the Defendants deprived her of a property interest in her continued civil service employment with the Town without affording due process of law in violation of the 14th Amendment of the United States Constitution as enforced through 42 U.S.C. § 1983.  To the contrary, the Defendants provided the Plaintiff with adequate notice of the reasons for her termination through the numerous written warnings regarding her uncooperative and disruptive behavior. (**Exhibits 9-11, 23**). Moreover, the Defendants provided the Plaintiff with written notice of a pre-termination hearing and a reasonable opportunity to be heard. (**Exhibit 23**).  Accordingly, the Court must enter summary judgment in favor of the Defendants on Count one of the Complaint.

To state a claim under 42 U.S.C. § 1983 a plaintiff must allege conduct that deprived her of rights, privileges, or immunities secured by the Constitution or laws of the United States; and that the conduct complained of was committed by a person acting under the color of law. See Gomez v. Toledo, 446 U.S. 635, 640 (1980). A municipality is not vicariously liable under § 1983 for the unauthorized, unconstitutional actions of its employees merely because a municipality is their employer. See Monell v.

- 20 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Department of Soc. Sevs., 436 U.S. 658, 694 (1978); see also City of Canton v. Harris, 489 U.S. 378, 385 (1989). However, municipalities may be sued under 42 U.S.C. § 1983 for constitutional deprivations that result from an officially adopted policy or custom. See Monell, 436 U.S. at 690; Sarus v. Rotundo, 831 F.2d 397, 400 (2d Cir.1987). Therefore, a plaintiff must show three elements to hold a municipality liable under 42 U.S.C. § 1983:(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. See Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir.1983); see also Williams v. Smith, 781 F.2d 319, 323 (2d Cir.1986). To survive summary judgment, the plaintiff must introduce affirmative, factual evidence to support allegations of an unconstitutional municipal custom or policy. See San Filippo v. United States Trust Co., 737 F.2d 246, 256 (2d Cir.1984); Landy v. Irizarry, 884 F.Supp. 788, 794 (S.D.N.Y.1994).

In analyzing a procedural due process claim, courts apply "the familiar two-step inquiry. [The Court] must determine (1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process was due before he could be deprived of that interest." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir.2002) (citations omitted). See also Narumanchi v. Board of Trs. of the Connecticut State Univ., 850 F.2d 70, 72 (2d Cir.1988) ("If a protected interest is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process.") (emphasis in original).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

A public employee who has a right not to be fired without "just cause" has "a property interest in h[er] employment that qualifie[s] for the protections of procedural due process." <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir.1991).  The essential elements of due process are notice and an opportunity to be heard. <u>See Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985). In <u>Loudermill</u>, the Supreme Court, after acknowledging that the individual's interest in continued employment was "substantial," held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." <u>Loudermill</u>, 470 U.S. at 546, 105 S.Ct. 1487. However, the pre-termination opportunity to be heard need not be elaborate. Focusing on the third factor in <u>Mathews</u> the Court concluded that "[t]o require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." <u>Id.</u>

In recent decisions, the Second Circuit has also acknowledged that due process requires at least some measure of opportunity to be heard prior to termination. <u>See, e.g.</u>, <u>Otero v. Bridgeport Hous. Auth.</u>, 297 F.3d 142, 151 (2d Cir.2002) ("The pretermination process 'need not be elaborate' or approach the level of a 'full adversarial evidentiary proceeding,' but due process does require that before being terminated such an 'employee [be given] oral or written notice of the charges against h[im], an explanation of the employer's evidence, and an opportunity to present h[is]

- 22 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

side of the story.' ") (citations omitted) (emphasis in original); <u>Locurto v. Safir</u>, 264 F.3d 154, 171 (2d Cir.2001) ("When such a public employee is terminated, procedural due process is satisfied if the government provides notice and a limited opportunity to be heard prior to termination, so long as a full adversarial hearing is provided afterwards.") (citations omitted); <u>Zinker v. Doty</u>, 907 F.2d 357, 361 (2d Cir.1990) (same).

Notwithstanding the Plaintiff's inability to demonstrate an official policy or custom that caused the plaintiff to be subjected to a denial of a constitutional right to support a § 1983 claim, the Plaintiff was appropriately terminated by the Town for cause under the provisions of the Personnel Rules. Under the classified civil service system of employment with the Town, the Plaintiff could be terminated for cause, reduction in force due to necessary economics or abolition or consolidation of positions by reorganization. (**Exhibit 1**, pp. 43-44).  The Defendants have presented ample documentation demonstrating that the Plaintiff was warned on numerous occasions about her behavioral problems, which she failed to correct even with the assistance of the Defendants Employee Assistance Program counselor.  (**Exhibits 9-11**).  As such, the Plaintiff was on notice at least as of June 1999, that her performance and behavioral issues could result in her termination.  (**Exhibit 12**).

The Plaintiff was further presented with written notice of a pre-termination meeting to give her an opportunity to respond to the Town's decision to terminate her from employment.  (**Exhibit 23**).  The Plaintiff was provided with such notice and an opportunity to be heard regarding her employment prior to her termination and even

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

participated in the Town's grievance procedure to appeal her dismissal. (**Exhibits 24-26**).  Accordingly, since the Defendants appropriately provided the Plaintiff with notice and an opportunity to be heard, the Court must grant summary judgment in favor of the Defendants on Count One of the Complaint.

**B.     THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON COUNTS TWO AND FIVE ALLEGING FIRST AMENDMENT RETALIATION.**

**1.     The Plaintiffs Claims Regarding Retaliation and Denial of Equal Protection for Participating in Protected Union Activity In Violation of 42 U.S.C. § 1983 Are Time Barred.**

In Count Two, the Plaintiff alleges that the Defendants retaliated against her in violation of 42 U.S.C. § 1983, based on her alleged activities advocating and organizing co-workers with respect to joining a labor union which were associational activity and/or expressions of opinion on matters of public concern that are protected by the First Amendment.  Complaint, Count Two, ¶ 50.  The Plaintiff sets forth the same allegations under Conn. Gen. Stat. § 31-51q in Count Five. Complaint, Count Five, ¶¶ 70-71.[1] Because the alleged violations regarding the Plaintiff's alleged union activity occurred more than three years before this civil action was commenced, this Court lacks jurisdiction over such claims and must enter summary judgment in favor of the defendants as a matter law.

---

[1] Claims of retaliation for the exercise of first amendment-protected rights under Conn. Gen. Stat. § 31-51q are analyzed by Connecticut courts using the § 1983 framework.  See, e.g., Cotto v. United Technologies Corp., 251 Conn. 1, 42 (1999); D'Angelo v. McGoldrick, 239 Conn. 356, 367 (1996)(stating that "§1983 [is] the comparable federal statute to 31-51q.").  As such, the Defendant will address these claims together.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Under U.S. Supreme Court precedent, because no statute of limitations is provided by section 1983, courts are instructed to select the state statute of limitations "most analogous" to govern action under that section.  Owens v. Okure, 488 U.S. 235, 240 (1989).  For Connecticut, the U.S. Court of Appeals has set that period for the Second Circuit at three years. Lounsbury v. Jeffries, 25 F.3d 131, 132-33 (2d Cir. 1994).

The Plaintiff alleges that in the Spring of 1997, the Association of Federal, State, County and Municipal Employees ("AFSCME") initiated a campaign to unionize the Town's employees.  Complaint, ¶ 18.  The Plaintiff alleges that after a unionization vote, Plaintiff actively sought to reorganize the clerical staff members that favored unionization to pursue membership with another labor organization.  Id.  The Plaintiff alleges that the Town and Ms. Knipple, a Town employee hired in December 1999 to an Assessment Technician position, opposed those organization efforts which were ultimately successful.  Complaint, ¶ 20.

Because the Complaint was not filed until July 13, 2001, more than three years has elapsed since these incidents, which allegedly occurred in Spring 1997, and the statute of limitations for these claims has expired.  Moreover, even if the Plaintiff's claims were not time barred, Courts in this District have held that an eight-month lapse between protected activity and an adverse employment action does not suggest a causal relationship between the two events.  See, e.g., Lees v. Case-Hoyt Corp., 779 F.Supp. 717, 726 (W.D.N.Y.1991) (granting summary judgment to employer and finding no indirect proof of causal nexus where there was seven-month gap between protected

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

activity and adverse employment action).  In this case, over four (4) years had elapsed

between the Plaintiff's alleged union activity in Spring 1997 and her termination for

cause in March 2001, which does not demonstrate a nexus between the two events.

Accordingly, since this Court lacks jurisdiction over the Plaintiff's claims of retaliation for

participating in union activity in Counts Two and Five, summary judgment must enter in

favor of the Defendants on these claims as a matter of law.

> **2.    The Plaintiff Cannot Raise Any Genuine Issues of Fact Regarding Her Claim of Retaliation for Speaking Out On A Matter Of Public Concern.**

Even if the Plaintiffs claims are not time barred, the Plaintiff's alleged protected

speech relates to her own personal matters and unprotected private conduct, which is

not subject to First Amendment protection.  "To establish a retaliation claim under

Section 1983, a plaintiff initially must show that [her] conduct was protected by the first

amendment, and that defendants' conduct was motivated by or substantially caused by

the exercise of his free speech." (citation omitted)  Bernheim v. Litt, 79 F.3d 318, 324

(1996).  "A public employee's right to freedom of speech is not absolute."  Id.

Generally, "[w]hen a dispute arises relating to the First Amendment rights of a public

employee, the courts must balance the employee's right to comment on matters of

public concern with the government's interest as an employer to effectively and

efficiently provide public services."  Id., citing Connick v. Myers, 461 U.S. 138, 142, 103

S.Ct 1684 (1983) and Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct 1731

(1968).  However, this balancing test is not used where an employee speaks not as a

- 26 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

citizen, but as an employee expressing a personal grievance as to internal office policy.

Roberts v. Van Buren Pub. Sch., 773 F.2d 949, 955 (8th Cir. 1985); see also Connick v.

Myers, 461 U.S. 138, 147, 103 S.Ct. 1684 (1983); Berheim, supra, at 324.  In such a

case, the court will not extend any protection to the plaintiff's statement, and no cause

of action exists for a violation of the First Amendment.  Id.  The question of "[w]hether

an employee's speech addresses a matter of public concern and is thus protected

under the First Amendment is one of law, not fact."  (internal quotation marks omitted,

citations omitted.) Hale v. Mann, et al., 219 F.3d 61, 70 (2d Cir. 2000).

The Second Circuit looks only at the employee's motive for the speech,

"regardless of whether the subject matter of a particular statement is of inherent interest

to society at large, 'to determine whether the speech was calculated to redress personal

grievances or whether it had a broader public purpose.'"  Daley v. Aetna Life and

Casualty Co. et al., 249 Conn. 766, 780 (1999) quoting Lewis v. Cowen, 163 F.3d 154,

163-64 (2d Cir. 1999).  "[T]he fact that an employee's speech…touches on matters of

public concern will not render that speech protected where the employee's motive for

the speech is private and personal."  Blum v. Schlegel, 18 F.3d 1005, 1012 (2d Cir.

1994).

Not all employee speech is entitled to constitutional protection.  If the employee's

speech relates solely to issues of personal concern to the employee, the speech is not

protected. See Bernheim v. Litt, 79 F.3d 318, 324-25 (2d Cir.1996); Saulpaugh v.

Monroe Cmty. Hosp., 4 F.3d 134, 143 (2d Cir.1993) (speech is not entitled to First

- 27 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Amendment protection if it is personal in nature and relates to the plaintiff's individual situation). As the Supreme Court instructed in <u>Connick v. Myers</u>, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), "when a public employee speaks not as a citizen upon matters of public concern, but instead as a employee upon matters of only personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." <u>Id.</u> at 147, 103 S.Ct. 1684; <u>see also Bernheim</u>, 79 F.3d at 324 (<u>quoting Connick</u> ); <u>White Plains Towing Corp</u>., 991 F.2d at 1058 (same); <u>Ezekwo</u>, 940 F.2d at 781.

In <u>Ezekwo v. NYC Health and Hosp. Corp.</u>, 940 F.2d 775 (2d Cir.1991), the Court of Appeals affirmed the district court's decision that rejected a medical resident's claim that her series of letters and memoranda complaining of various conditions at the hospital, including supervision, teaching skills, management, and hospital maintenance, was constitutionally protected speech under the First Amendment. The Court determined that the resident was not seeking to protect the public welfare and agreed with the district court's finding that "the mere fact that one or two of Ezekwo's comments could be construed broadly to implicate matters of public concern does not alter the general nature of her statements." <u>Id.</u> at 781.

Further, in <u>de Llano v. Berglund</u>, 232 F.3d 1031 (8th Cir. 2002), the court held that where a state university professor wrote repeated letters to the local newspaper that "essentially amounted to publicly airing his dissatisfaction with his removal as chair of

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the physics department and the department's undervaluation of his strong commitment

to research," there were no matters of public concern.  "De Llano's letters indicated that

he was unhappy with several personnel decisions made by [his school], ranging from

which people were chosen as department chairs, to the failure of [the school] to rehire a

Gulf War veteran…One of de Llano's letters criticized the allocation of travel money

within departments [and another ] aired his complaint that he was not allowed to bring in

a Brazilian scientist to work with him."  Id. at 1036-37.

    In this case, the Plaintiff's alleged protected speech relates to her personal

concerns and grievances regarding requests for sick time, notice of overtime hours and

her personal conflicts with Ms. Knipple, rather than any matter of public concern.

(**Exhibits 6, 10, 17, 18, 20**).  Notably, this alleged protected "speech" appears to be

calculated to redress her personal grievances rather than directed towards a broader

public purpose.  Simply because the Plaintiff's alleged protected "speech" touches on

matters of public concern, i.e., office procedures, office mistakes, mistaken tax bills, and

lost tax opportunities, will not render that speech protected where, as here, the Plaintiff's

motive for the speech is private and personal. Complaint, ¶ 21.

    Since the determination of whether the Plaintiff's alleged protected "speech"

addresses a matter of public concern and is thus protected under the First Amendment

is one of law, not fact, the Court must find that the Plaintiff's alleged "speech" relates to

her own personal grievances, and not matters of public concern and enter summary

judgment in favor of the defendants on those claims.

- 29 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### 3.    The Defendants Did Not Retaliate Against the Plaintiff for Any Alleged Protected Conduct.

It is well-established that a public employer cannot retaliate against an employee for the exercise of the employee's First Amendment free speech rights. Rankin v. McPherson, 483 U.S. 378, 383-84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1057-58 (2d Cir.1993); Ezekwo v. NYC Health & Hosps. Corp., 940 F.2d 775, 780 (2d Cir.1991). To determine whether an adverse employment decision violates a government employee's right to free speech, the employee must show (1) that the speech at issue was constitutionally protected, (2) that she suffered an adverse employment decision, and (3) that there is a causal connection between his speech and the adverse employment decision such that it can be said that the employee's speech was a motivating factor in the adverse employment decision. See Morris v. Lindau, 196 F.3d 102, 110 (2d Cir.1999) (citing Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 286, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)); see also Gorman-Bakos v. Cornell Cooperative Extension of Schenectady Cty., 252 F.3d 545, 553 (2d Cir.2001). If a plaintiff proves these elements, a public employer and its agents may avoid liability by proving by a preponderance of the evidence that they would have made the adverse employment decision even in the absence of the protected conduct.  See Mt. Healthy, 429 U.S. at 287, 97 S.Ct. 568; Morris, 196 F.3d at 110.

HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

In this case, the Plaintiff's alleged protected speech relates to her personal concerns and grievances, which is unprotected private conduct. (**Exhibits 6, 10, 17, 18, 20**).  Thus, the Plaintiff cannot sustain her burden that the speech was constitutionally protected.  As set forth above, the Plaintiff cannot demonstrate any nexus between alleged union activity and her termination, which occurred over four (4) years later.  As such, any nexus between her union activity and her termination is tenuous.  Moreover, the Plaintiff cannot demonstrate a causal connection between her alleged speech and her termination such that it can be said that her speech was a motivating factor in the adverse employment decision.  Specifically, any alleged adverse employment action was a result of the Plaintiff's documented history of unprofessional behavior, despite repeated efforts by the Town to correct the same, including the referral to an Employee Assistance Program counselor. (**Exhibits 9, 11**).  Since the Plaintiff cannot demonstrate that the Defendants retaliated against her for any alleged protected conduct, summary judgment must enter in favor of the Defendants.

### C.   THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S EQUAL PROTECTION CLAIMS ALLEGED IN COUNT THREE.

The Plaintiff further alleges in Count Three that she engaged in First Amendment protected activity and that the Defendants' conduct denied her equal protection in violation of the Fourteenth Amendment since she was singled our for unfair and illegal treatment.  Complaint, Count Three, ¶¶ 56-58.  Notwithstanding the fact that any claim

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

regarding alleged participation in union activity is time barred, the Plaintiff cannot demonstrate that the defendants denied her equal protection.

Since the plaintiff's equal protection claim does not seem to involve a class of any kind, this Court should find that her claim is based on a "class of one." The Supreme Court recognizes the validity of this genre of equal protection claim noting that "successful equal protection claims [have been] brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curiam); see also African Trade & Information Center, Inc. v. Abromatis, 294 F.3d 355, 363 (2d Cir.2002); Zeigler v. Town of Kent, --- F.Supp.2d ---, No. 00CV1117, 2003 WL 1969362, at *8 (D.Conn. Apr. 27, 2003); Russo v. City of Hartford, 184 F.Supp.2d 169, 190 (D.Conn.2002); Presnick v. Orange, 152 F.Supp.2d 215, 224 (D.Conn.2001).

Although the Second Circuit has declined to resolve the question of whether the Supreme Court's decision in Olech changed the requirement that malice or bad faith must be shown in order to state a valid "class of one" equal protection claim, see Harlen Associates v. Incorporated Village of Mineola, 273 F.3d 494, 499-500 (2d Cir.(2001); Giordano v. City of New York, 274 F.3d 740, 750 (2d Cir.2001), the Second Circuit has made clear that a plaintiff ... would be required to show that the decision was "irrational and wholly arbitrary," Giordano, 274 F.3d at 750 (citing Olech, 528 U.S. at 565), in other words, that there was "no legitimate reason for its decision." Harlen Assocs., 273 F .3d

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

at 500; <u>Zeigler</u>, 2003 WL 1969362, at *8.  Moreover, Courts are to afford governmental

decisions "a strong presumption of validity." <u>Heller v. Doe by Doe</u>, 509 U.S. 312, 319

(1993). A governmental decision should be upheld if there is "any reasonably

conceivable state of facts that could provide a rational basis" for the different treatment.

<u>Id.</u>

Even assuming that the plaintiff was treated differently, which the Court should

be reluctant to find in light of innocuous allegations presented in the Complaint, the

plaintiff cannot demonstrate facts whatsoever that would establish that such treatment

by the Defendants was without rational basis. In other words, the Plaintiff cannot submit

any evidence that the defendants' actions were irrational and wholly arbitrary or without

legitimate reason.   The Plaintiff claims she was treated unequally in violation of the

Equal Protection Clause of the Constitution.  However, there is no indication that the

Plaintiff was singled-out for unequal treatment.  Indeed, the Defendants had referred

both the Plaintiff and Ms. Knipple to the Employment Assistance Program counselor in

an effort to resolve their problems.  (**Exhibit 9**).

Moreover, the Plaintiff repeats throughout memos submitted to her employer that

her discharge in large part was because of her interpersonal problems with Mr. Knipple.

(**Exhibits 6, 10, 17, 18, 20**).  She states in her unemployment compensation request

that "I believe that my discharge was due to … problems between this co-worker and

myself. … Up until the time this co-worker was hired [November/December 1999], I had

no problems and had not been issued any warnings."  (**Exhibit 21**).  Thus, the Plaintiff's

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hᴀʟʟᴏʀᴀɴ
& Sᴀɢᴇ LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

own insistence that Laura Knipple caused her employment problems is strong evidence

that the problems in the office were not the result of some sort of unfair treatment, but

rather her own interpersonal problems.  Moreover, it is simply not a plausible position

that the Plaintiff was unaware of any warnings based on the numerous documents she

had received, or that she was unaware that her behavior problems could result in her

dismissal since she was specifically warned that it could result in her termination in April

2000. (**Exhibit 12**).  Accordingly, since the Plaintiff cannot submit any evidence that the

defendants' actions were irrational and wholly arbitrary or without legitimate reason,

summary judgment must enter in favor of the Defendants on Count Three.

> **D.   THE PLAINTIFF'S STATE LAW RETALIATION CLAIMS UNDER CONN. GEN. STAT. § 31-51m ARE TIME BARRED.**

The Plaintiff claims that the Defendants disciplined and terminated the Plaintiff

since she orally and verbally reported misconduct and abuse of authority in violation of

Conn. Gen. Stat. § 31-51m.  Complaint, Count Four, ¶¶ 63-64. Since the Plaintiff failed

to timely file her claims within ninety (90) days of the final administrative determination

of her termination, such claims are time barred.

Where a federal court adjudicates state law claims, " 'state statutes of limitations

govern the timeliness of state law claims', and state law 'determines the related

questions of what events serve to commence an action and to toll the statute of

limitations.' " Diffley v. Allied-Signal, Inc., 921 F.2d 421, 423 (2d Cir.1990) (citing

Personis v. Oiler, 889 F.2d 424, 426 (2d Cir.1989)); accord Converse v. General Motors

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Corp., 893 F.2d 513 (2d Cir.1990) ("It is well established that the doctrine enunciated in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), applies to the manner in which a diversity action is considered commenced for purposes of state statutes of limitations."); Walker v. Armco Steel Corp., 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980). Thus, state law determines not only the applicable statute of limitations, but also whether filing or service of the complaint "commences" an action for tolling purposes. See id.

Conn. Gen. Stat. § 31-51m is known as Connecticut's "whistle blower" protection statute.  See Campbell v. Town of Plymouth, 74 Conn. App. 67, 71, 811 A.2d 243, 248 (2002).  Section 31-51m provides that the employee must bring a civil action within ninety days of [her] termination or ninety days of the end of the administrative process. See Conn. Gen. Stat. § 31-51m(c).  In this case, the Defendants terminated the Plaintiff by letter dated March 12, 2001. (**Exhibit 23**).  The Plaintiff filed an appeal regarding this decision and the administrative process ended by Mr. Shaffer's letter dated April 16, 2001, which upheld the decision to terminate the Plaintiff's employment.  (**Exhibit 27**). As such, the Plaintiff would have had to "commence" a civil action on or before July 15, 2001, in order to timely bring any such claims under § 31-51m.  The Complaint dated July 13, 2001, was not served on the Town Clerk until July 18, 2001; (**Exhibit 31**), which is beyond the ninety (90) day period to bring such claims.  This is because under Connecticut law, an action is commenced on the date of service of the writ, summons and complaint upon the defendant. See Valley Cable Vision, Inc. v. Public Utilities

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

HALLORAN
& SAGE LLP

Commission, 175 Conn. 30, 33 (1978); Broderick v. Jackman, 167 Conn. 96, 99 (1974);

Seaboard Burner Corp. v. DeLong, 145 Conn. 300, 303 (1958).

Even if the Plaintiff timely filed her claims under § 31-51m, the plaintiff cannot

demonstrate under the McDonnell Douglass burden shifting framework that she

engaged in a protected activity and that there was a causal connection between her

participation in the protected activity and her discharge.  See  Ritz v. East Hartford, 110

F. Supp.2d 94, 98 (D.Conn.2000); see also Beizer v. Dept. of Labor, 56 Conn.App. 347,

355-56, 742 A.2d 821.  The alleged protected activity relates solely to the Plaintiff's

personal concerns, which is unprotected private conduct.  (**Exhibit 6, 10, 17, 18, 20**).

This particularly true since the Defendant has demonstrated that it terminated the

Plaintiff due to her documented history of unprofessional behavior, failure to follow

supervisors' instructions, leaving the office without permission, and her inability to get

along with co-workers. (**Exhibits 9-11, 23**).  Accordingly, summary judgment must enter

in favor of the Defendants.

**E.    THE DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIM FOR BREACH OF CONTRACT AS ALLEGED IN COUNT SIX.**

The Plaintiff claims that the Town breached its employment contract with the

Plaintiff.  Complaint, Count Six, ¶ 76.  The Plaintiff, however, can demonstrate no

genuine issue of fact in support of her claim that the Town failed to follow the

termination procedures as set forth in the Personnel Rules regarding her termination

process. "[T]he key elements of a breach of contract action considered by the court are

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the formation of an agreement, performance by one party, breach of the agreement by the other party and damages." <u>Bouchard v. Sundberg</u>, 80 Conn.App. 180, 189, 834 A.2d 744 (2003).  In this case, the Plaintiff was terminated for cause under Section 11 of the Personnel Rules based on her documented history of unprofessional behavior, failure to follow supervisors' instructions, leaving the office without permission, and her inability to get along with co-workers. (**Exhibits 9-11, 23**).  Accordingly, the Plaintiff's state law breach of contract claim must fail and the Town is entitled to summary judgment on this claim.

> **F.   THE DEFENDANT VAN OUDENHOVE IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIM FOR DEPRAVATION OF LIBERTY AS ALLEGED IN COUNT SEVEN.**

In Count Seven, the Plaintiff claims that in connection with her termination, Defendant Van Oudenhove made false and disparaging remarks that damaged the Plaintiff's reputation and deprived her of a liberty interest in violation of the Fourteenth Amendment.  Complaint, Count Seven, ¶ 81.  The Plaintiff, however, cannot demonstrate that statements regarding her behavior are "stigmatizing," so as to give rise to a name-clearing hearing.  Moreover, any alleged statements by Defendant Van Oudenhoven regarding the Plaintiff's employment were privileged.

The protection of liberty enshrined in the Fourteenth Amendment encompasses the freedom "to engage in any of the common occupations of life." <u>Meyer v. Nebraska</u>, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Thus, if an employee is discharged in a manner that so significantly impairs his reputation that he is unable to

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Hálloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

secure like employment, he may have a cause of action under the Due Process Clause.

See Board of Regents v. Roth, 408 U.S. 564, 573, 92 S.Ct. 2701, 33 L.Ed.2d 548

(1972) (" '[W]here a person's good name, reputation, honor, or integrity is at stake

because of what the government is doing to him, notice and an opportunity to be heard

are essential.' " (quoting Wisconsin v. Constantineau, 400 U.S. 433, 437, 91 S.Ct. 507,

27 L.Ed.2d 515 (1971))). The employee must show that when he was discharged,

statements were made that impugned the employee's reputation and interfered with his

ability to secure employment elsewhere. See Donato v. Plainview-Old Bethpage Cent.

School Dist., 96 F.3d 623, 630 (2d Cir.1996).

In this case, the Plaintiff does not allege, not can she demonstrate any evidence

that statements concerning his her were publicized by Defendant Van Oudenhve or

interfered with her ability to secure employment elsewhere. Moreover, the Plaintiff's

interrogatory responses indicate that she has secured alternative employment.  (**Exhibit**

5, Interrogatory Nos., 1, 10).   As such, any alleged statements by Van Oudenhove

would be insufficient to constitute a "significant roadblock" to the Plaintiff's ability to

practice his profession or occupation. See Donato, 96 F.3d at 631; Astwood v. Dep't of

Corr., 45 Fed.Appx. 40, 42, 2002 WL 31002489, at *2 (2d Cir.2002).

Moreover, the Defendants have demonstrated that the Plaintiff was terminated

for cause based on her documented history of unprofessional behavior, failure to follow

supervisors' instructions, leaving the office without permission, and her inability to get

along with co-workers. (**Exhibits 9-11, 23**)  In addition, alleged statements by

- 38 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Defendant Van Oudenhove regarding the Plaintiff's employment were privileged.  See

Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 27

(1995)("communications between managers regarding the review of an employee's job

performance and the preparation of documents regarding an employee's termination are

protected by a qualified privilege. Such communications and documents are necessary

to effectuate the interests of the employer in efficiently managing its business.").

Accordingly, summary judgment must enter in favor of the Defendant Van Oudenhove

on Count Seven of the Complaint.

### G.    THE DEFENDANT VAN OUDENHOVE IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIM FOR DEFAMATION AS ALLEGED IN COUNT EIGHT.

In Count Eight, the Plaintiff claims that the Defendant Van Oudenhove made

false and disparaging remarks that damaged the Plaintiff's reputation.  Complaint,

Count Eight, ¶ 86.  In order to establish a claim of defamation under Connecticut law the

plaintiff must prove that "the defendant published false statements that harmed the

[plaintiff], and that the defendant [was] not privileged to do so." Torosyan, supra., 234

Conn. 1, 27 (1995). Generally, "communications between managers regarding the

review of an employee's job performance and the preparation of documents regarding

an employee's termination are protected by a qualified privilege. Such communications

and documents are necessary to effectuate the interests of the employer in efficiently

managing its business." Torosyan, supra, 234 Conn. at 29.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

The Plaintiff claims that Mr. Van Oudenhove defamed her by making false and disparaging remarks that damaged Plaintiff's reputation.  Complaint, Count Eight, ¶ 86. The Plaintiff does not provide specific statements that allegedly defamed her, nor does she indicate in what manner her reputation has been damaged. (**Exhibit 5**, Interrogatories Nos. 14-16).  As such, assuming the alleged defamatory statements were contained in the documents regarding the Plaintiff's behavior and performance, any such statements would be privileged as communications to effectuate the interests of the employer.  See <u>Torosyan</u>, <u>supra</u>, 234 Conn. at 29.  Further, the Defendants have demonstrated that the numerous documents support the fact that the Plaintiff had interpersonal problems with her co-workers and frequently believed she was being targeted.  It therefore appears that the only statements that Mr. Van Oudenhove made that could damage the Plaintiff's reputation are true, which is an absolute defense to defamation. See <u>Cweklinsky v. Mobil Chemical Co</u>., 267 Conn. 210, 228, 837 A.2d 759 (2003).  As such, the defendants are entitled to summary judgment on these claims.

## H.     THE INDIVIDUAL DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

Under the qualified immunity doctrine, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known.  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 524, 105 S. Ct. 2806 (1985); <u>Martinez v. Simonetti</u>, 202 F. 3d 625, 632 (2d Cir. 2000).  Under this

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

doctrine, a defendant's liability is not determined by whether he or she violated a plaintiff's constitutional rights, but rather whether his actions were objectively reasonable at the time; "[e]ven Defendants who violated constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct was unreasonable under the applicable standard." Zahra v. Town of Southold, 48 F.3d 674, 686 (2d Cir. 1995), quoting Davis v. Scherer, 468 U.S. 183, 190, 194 S. Ct. 3012 (1984). An official is liable only if the contours of the right he is alleged to have violated are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034 (1987). Government officials are not liable for "bad guesses in gray areas; they are liable for transgressing bright lines." Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992), cert. denied, 506 U.S. 1080, 113 S.Ct. 1048 (1993). The question of qualified immunity is an issue to be decided as a matter of law by the Court, "preferably on a pretrial motion for summary judgment when possible." Warren v. Dwyer, 906 F.2d 70, 76 (2d Cir. 1990).

In Mitchell, the Court observed that defenses based on qualified immunity are uniquely situated to being resolved on summary judgment. Mitchell, 472 U.S. at 526. The Court determined that the purpose of qualified immunity is:

> [t]o avoid [subjecting] government officials either to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time … Harlow thus recognized an entitlement not to stand trial or face the other burdens on

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

litigation, conditioned on the resolution of the essentially legal question [of] whether the conduct of which plaintiff complains violated clearly established law.

Id. at 526, 105 S. Ct. at 2816, discussing Harlow v. Fitzgerald, 457 U.S. 800, 73 L.Ed 2d 396, 102 S. Ct 2727 (1982).

In this case, the Plaintiff appears to claim that the Defendants' actions were unreasonable and performed with the intent to deprive her of her position and income as a classified civil service employer, a constitutionally protected property right.  The Plaintiff, however, cannot meet the high burden of showing malicious intent.   The Defendants have demonstrated that the Plaintiff had a documented history of interpersonal problems and performance issues.  (**Exhibits 9-11**).  Moreover, the Defendants had attempted to assist the Plaintiff by referring her to the Employment Assistance Program counselor. (**Exhibit 9**). As such, since the Plaintiff cannot demonstrate that the conduct of the individual Defendants was unreasonable conduct, the individual Defendants are entitled to qualified immunity.

## V.    CONCLUSION

For all the above reasons, the Defendants respectfully request the Court to enter summary judgment in their favor on all counts of the Complaint dated July 13, 2001.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE DEFENDANTS,
LAURENCE SCHAFFER, JOHN VAN
OUDENHOVE, DANIEL SULLIVAN and
the TOWN OF VERNON


By_____
    James M. Sconzo, Esq.
    Fed. Bar # ct04571 and
    Kevin R. Brady, Esq.
    Fed. Bar # ct22135 of
    HALLORAN & SAGE LLP
    One Goodwin Square
    225 Asylum Street
    Hartford, CT 06103
    Federal Bar No. ct22135
    Their Attorneys


## CERTIFICATION

This is to certify that on this 20th day of February 2004, I hereby mailed a copy of the foregoing to:

Craig T. Dickinson, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106


_____
Kevin R. Brady

510403.1(HSFP)

- 43 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105