## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____
**MARYANNE LEVESQUE,**                :
      **Plaintiff**                :
                         :   **No. 3:01 CV 1325 (DJS)**
**V.**                :
                         :
**TOWN OF VERNON, LAURENCE R.**   :
**SCHAFFER, JOHN VAN OUDENHOVE** :
**and DANIEL SULLIVAN,**                :   **April 15, 2004**
      **Defendants.**                :
_____:

## LOCAL 56(a)(2) STATEMENT IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff, Maryanne Levesque, through her undersigned counsel, hereby submits the fo0llowing statement pursuant to Rule 56(a)(2) of the Local Rules of the District of Connecticut.

A.    <u>Plaintiff's response to Defendants' Local Rule 56 Statement</u>.

1.    Admitted to the extent that the Town has adopted such a civil service system.  Plaintiff denies, however, that Defendants acted in compliance with the mandate of the town's civil service system.

2.    Admitted to the extent that the Town has adopted such Rules and Regulations.  Plaintiff denies, however, that the authority vested in the Town Administrator by the Rules and Regulations to discipline and discharge employees is authorized by the Town Charter.  Plaintiff contends that the Town Charter expressly prohibits the Town Administrator from disciplining or discharging employees.  (Town Charter Ch. XI, § 6(9).)

3.    Admitted.

4.    Admitted.

5.      Admitted only to the extent that Plaintiff was described as "an inquisitive individual." Plaintiff denies that numerous memoranda and notes between her supervisors and co-workers indicate that she continuously attempted to micromanage her fellow employees and even her supervisors.  Plaintiff contends that she was well liked by fellow employees besides Ms. Knipple and Mr. Van Oudenhove.  (*See*, *e.g.*, Korbusieski Depo.)  Furthermore, the complaints by Ms. Knipple and Mr. Van Oudenhove are often inconsistent and contradictory.  (*See*, *e.g.*, Levesque Memo, dated April 15, 1999, attached hereto as Ex. J; Knipple Memo, dated Nov. 17, 1999, attached hereto as Ex. K; Van Oudenhove Memo, dated Feb. 8, 2000, attached hereto as Ex. L.) Even after he terminated her, Mr. Shaffer stipulated that "there was never any question about [Plaintiff's] knowledge [of her job] or work ethic."  (Shaffer Depo. at 65, attached hereto as Ex. F.)  Finally, more than a dozen of Plaintiff's co-workers signed a petition in favor of her continued employment and other individuals wrote letters to Mr. Shaffer extolling Plaintiff's virtues as a good employee.  (*See* Shaffer Depo. at 98-110; Petition at Ex. AA.)

6.      Denied.  Plaintiff did not have any personality problems with her co-workers in the early years of her employment.  From 1995 until 1999, Plaintiff's personnel file was devoid of any evidence of disciplinary action or criticism.  (*See* Shaffer Depo. at 61; Sullivan Depo. at 23.)  Mr. Sullivan recalls that Ms. Knipple was hired in either late 1998 or early 1999, not as late as December 1999.  (Sullivan Depo. at 19.)  Mr. Sullivan's recollection is supported by fact that Plaintiff complained about Ms. Knipple in a memorandum to Mr. Sullivan that she wrote in April 1999.  (Levesque Memo, dated April 5, 1999, attached hereto as Ex. J.)

7.      Admitted only to the extent that Ms. Knipple was a source of Plaintiff's problems, not the source of Plaintiff's problems.  Plaintiff regularly complained that Mr. Van Oudenhove was harassing her, treating her unfairly, and trying to get her to quit, which are consistent with her

allegations that he was retaliating against her for expressing her opinions regarding incompetence and misconduct in the Tax Assessor's office. (Levesque Memo, dated Jan. 23, 2000, attached hereto as Ex. P; Levesque Letter, dated July 20, 1999, attached hereto as Ex. O; Levesque Letter, dated January 18, 2000, attached hereto as Ex. Q; Levesque Memo, dated Nov. 21, 2000, attached hereto as Ex. R.)

8.    Admitted only to the extent that Plaintiff's memo contained complaints about Ms. Knipple. Plaintiff does not admit that said memo is the first such document memorializing problems that existed between Plaintiff and Ms. Knipple. Nor does Plaintiff admit that Plaintiff's memo memorialized a "conflict with Ms. Knipple." Plaintiff's memo was written to Mr. Ludecke, the Finance Director who oversaw the Assessor's Office, and Mr. Sullivan, the Human Relations Director, and it was a general indictment about the state of affairs in the Assessor's Office at that time. Plaintiff not only complained about Ms. Knipple, but other co-workers including her supervisors. (*See* Levesque Memo, dated Jan. 23, 2000, attached hereto as Ex. P; Levesque Letter, dated July 20, 1999, attached hereto as Ex. O; Levesque Letter, dated January 18, 2000, attached hereto as Ex. Q; Levesque Memo, dated Nov. 21, 2000, attached hereto as Ex. R.)

9.    Admitted only to the extent that Ms. Knipple wrote such a memo. Plaintiff does not admit the accuracy of Ms. Knipple's allegations. In fact, Mr. Shaffer characterized Ms. Knipple's reactions to Plaintiff as "overblown histrionics." (Shaffer Depo. at 32, 53.) At least one co-worker felt that Ms. Knipple caused the problems in the office and remembered that Ms. Knipple had problems with several Town employees in addition to Plaintiff, which continued after Plaintiff's termination. (*See* Korbusieski Depo. at 26-29, 31, 40-42.)

10.     Admitted only to the extent that Ms. Knipple wrote such a memo.  Plaintiff does not admit the accuracy of Ms. Knipple's allegations.  In fact, Mr. Shaffer characterized Ms. Knipple's reactions to Plaintiff as "overblown histrionics."  (Shaffer Depo. at 32, 53.)  At least one co-worker felt that Ms. Knipple caused the problems in the office and remembered that Ms. Knipple had problems with several Town employees in addition to Plaintiff, which problems persisted after Plaintiff's termination.  (*See* Korbusieski Depo. at 26-29, 31, 40-42.)

11.     Admitted only to the extent that Ms. Aregood made an isolated complaint at one time about something that Plaintiff had done.  Plaintiff does not admit that "other employees" except Ms. Knipple made similar complaints. To the contrary, more than a dozen of Plaintiff's co-workers signed a petition in favor of her continued employment and other individuals wrote letters to Mr. Shaffer extolling Plaintiff's virtues as a good employee.  (*See* Shaffer Depo. at 98-110; Petition annexed as Ex. AA)

12.     Admitted only to the extent that Defendants' memoranda criticizing Plaintiff's performance and behavior are evidence of Defendants' pretextual explanation for their retaliatory conduct.  Plaintiff denies the veracity of Defendants' allegations.  In fact, a fair amount of evidence expressly rebuts the allegations contained in Defendants' memoranda.  Mr. Wheeler, Plaintiff's immediate supervisor, praised her work performance at least twice during the fall of 2000.  (Wheeler Letters, attached hereto as Ex. S and Z.)  More than a dozen of Plaintiff's co-workers signed a petition in favor of her continued employment and many even wrote letters to Mr. Shaffer extolling Plaintiff's virtues as a good employee.  (*See* Shaffer Depo. at 98-110; Petition, Memos and Letters attached hereto as Ex. AA-GG.)  On one occasion, Mr. Ludecke, the Finance Director responsible for overseeing the Assessor's Office, found Mr. Van Oudenhove's criticisms of Plaintiff to be meritless.  He found that general communications

problems in the office, not Plaintiff's failure to follow instructions, caused the problems

complained of by Mr. Van Oudenhove.  (Grievance Resolution Memo, dated May 5, 2000,

attached hereto as Ex. N.)

14. [*sic*]        Admitted.

15.    Denied.  Plaintiff responded to the allegation that she "double-checks her supervisor's

work" in a memo, dated July 20, 1999, to Mr. Shaffer.  Plaintiff wrote:  "I am not double

checking anybody's work, but if I do come across a problem I feel obligated to relay the

information to my supervisor."  (Levesque Memo, dated July 20, 1999, attached hereto as Ex.

O.)  The underlying criticism leveled at Plaintiff by Mr. Van Oudenhove is that Plaintiff

inappropriately double-checked his work, corrects his mistakes, and discusses the mistakes with

others outside of the office.  The correction and communication of those mistakes is a matter of

public concern as the mistakes are manifestly related to the mismanagement of taxpayer funds.

16.    Admitted only to the extent that Defendants sent the aforementioned letter to Plaintiff.

Plaintiff does not stipulate as to the veracity of the allegations outlined in the letter.  For

example, Plaintiff outlined some of her disagreement with the allegations made in Defendants'

letter in a memo she wrote to Mr. Shaffer on July 20, 1999.  (*See* Levesque Memo, dated July 20,

1999, attached hereto as Ex. O.)

17.    Admitted only to the extent that Defendants sent the aforementioned letter to Plaintiff.

Plaintiff does not stipulate as to the veracity of the allegations outlined in the letter.  For

example, Plaintiff rebutted the allegations in Defendants' letter in a memo she wrote to Mr.

Shaffer on July 20, 1999.  (*See* Levesque Memo, dated July 20, 1999, attached hereto as Ex. O.)

18.    Admitted.

19.    Admitted only to the extent that Defendants sent such a letter to Plaintiff.

Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter. For example, Plaintiff explained her disagreement with the allegations made in Defendant's letter in a memo she wrote to Mr. Shaffer on July 20, 1999. (*See* Levesque Memo, dated July 20, 1999, attached hereto as Ex. O.)

20.     Admitted.

21.     Admitted only to the extent that Defendants sent such a letter to Plaintiff.

Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter.

22.     Admitted.

23.     Admitted.

24.     Denied.  Mr. Sullivan never sent such a letter to Plaintiff on January 18, 2000.  Mr. Van Oudenhove, however, did write such a memo to Plaintiff on the aforementioned date.  Plaintiff does not admit the veracity of the claims made by Mr. Van Oudenhove in the letter.  In fact, Plaintiff expressly refuted his claims in a letter to Mr. Shaffer on January 23, 2000. (Levesque Memo, dated January 23, 2000, attached hereto as Ex. P.)

25.     Admitted.

26.     Admitted.  Plaintiff also impressed upon Mr. Shaffer in her letter her belief that Mr. Van Oudenhove was making complaints about her because of a retaliatory motive.  (*See id.*)

27.     Admitted only to the extent that Defendants sent such a letter to Plaintiff.  Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter.

28.      Admitted only to the extent that Defendants sent such a letter to

Plaintiff.  Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter.

29.     Admitted.

30.     Admitted.

31.     Admitted only to the extent that Defendants sent such a letter to Plaintiff.  Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter.

32.     Admitted only to the extent that Defendants sent such a letter to Plaintiff.  Plaintiff does not admit the veracity of the allegations contained in the aforementioned letter or the inference that Defendants now try to make about the degree of notice that Plaintiff received.  Furthermore, in response to a grievance filed by Plaintiff over this matter, Mr. Ludecke, the Finance Director, concluded that general communications problems in the office, not Plaintiff's failure to follow instructions, caused the problems complained of by Mr. Van Oudenhove.  (Grievance Resolution Memo, dated May 5, 2000, attached hereto as Ex. N.)  Since Mr. Ludecke concluded that Plaintiff was not responsible for the problems complained of by Mr. Van Oudenhove, then his threat in the memo of future disciplinary action for the conduct of which he complained became a nullity.

33.     Admitted.

34.     Admitted.

35.     Admitted.  Mr. Ludecke concluded that the problems complained of by Mr. Van Oudenhove were not caused by Plaintiff.

36.     Admitted.

37.     Admitted.

38.    Admitted.

39.    Admitted only to the extent that Mr. Shaffer made such a conclusion.

Plaintiff does not admit the veracity or accuracy of Mr. Shaffer's conclusions.  Plaintiff also does

not admit that Mr. Shaffer's conclusions were the result of a thorough and complete investigation

of Plaintiff's claim of retaliatory harassment and discrimination.  For example, Mr. Shaffer does

address in his decision whether or not Plaintiff was discriminated against or harassed in

retaliation for earlier complaints about incompetence and misconduct in the Tax Assessor's

office.  (Shaffer Memo, dated Nov. 27, 2000)  Mr. Shaffer's memo demonstrates that he only

considered discrimination and harassment on the bases of "race, color, religion, marital status,

sexual orientation, mental retardation, or criminal record . . . ." (Id.)  Mr. Shaffer did not

consider whether Mr. Van Oudenhove was acting in a retaliatory fashion despite the fact that

Plaintiff specifically expressed, in an earlier memo written to him, her belief that Mr. Van

Oudenhove was retaliating against her because she complained about him.  (*See* Levesque

Memo, dated January 23, 2000, attached hereto as Ex. P) ("I believe that Mr. Van Oudenhove

may be retaliating against me due to a complaint I made against him").

40.    Admitted.  This memo is concrete evidence of the retaliatory, disparate treatment suffered

by Plaintiff.  Ms. Knipple's complaints to Mr. Van Oudenhove about Plaintiff were reacted to

with swift and numerous disciplinary memos from Mr. Van Oudenhove which were placed into

Plaintiff's personnel file.  Mr. Van Oudenhove responded to Plaintiff's complaints about Ms.

Knipple, however, by telling Plaintiff that she was "challenging his authority and maybe [she]

should quit [her] position with the Town of Vernon."  (Levesque Memo, dated Jan. 3, 2001,

attached hereto as Ex. U.)

41.    Admitted only to the extent that such a memo was written.  Plaintiff does not admit the

accuracy of Mr. Van Oudenhove's defamatory allegations about Plaintiff's work performance or

her mental stability.  Mr. Van Oudenhove's allegations about Plaintiff's work performance are

contradicted by Mr. Shaffer who said that "there was never any question about [Plaintiff's]

knowledge [of her job] or work ethic."  (Shaffer Depo. at 65.)  Furthermore, the veracity and

substance of Mr. Van Oudenhove's allegations about Plaintiff should be called into question

considering the fact that his memo, in which he levels against Plaintiff allegations that

supposedly justify his decision to call for her immediate termination, is devoid of any specific

examples of misconduct or factual support.  (Van Oudenhove Memo, dated February 2, 2001,

attached hereto as Ex. V.)  It is especially unclear what misconduct or improper behavior could

have prompted Mr. Van Oudenhove to demand Plaintiff's immediate termination in February

2001, when Mr. Sullivan indicated that "there was no major incident which precipitated

[Plaintiff's] discharge."  (Sullivan Unemployment Statement, attached hereto as Ex. Y.)  42.

    Admitted.

43.    Admitted to the extent that Defendants decided to terminate Plaintiff in

December 2000.  Plaintiff denies, however, that Plaintiff's termination was postponed until

March because "[i]nitially, it appeared that the Plaintiff's personal problems had subsided."

Defendants' revisionist explanation is not supported by any of the evidence and has not been put

forth by any of the principles involved in the termination process before this time.  For example,

Defendants' new story is disputed by Mr. Shaffer, the Town Administrator, who presided over

the termination process and ultimately made the decision to terminate Plaintiff.  Mr. Shaffer did

not cite any perception on his behalf that Plaintiff's personal problems had subsided in the early

months of 2001.  In fact, Mr. Shaffer disputes Defendants' contention that the decision to

terminate Plaintiff was ever made in December 2000.  Plaintiff denies Defendants' contention

that her termination was postponed until March 2001 because it appeared as if her personal

problems were improving because it is patently unsupportable based on the facts of this case.

There is no evidence that anybody perceived a change in Plaintiff's performance and Defendants

do not put forth any evidence to support such a contention at this time.  Frankly, there is no

evidence to contradict Mr. Sullivan's statement that a final decision to terminate Plaintiff was

made in December 2000.  To the contrary, there is considerable evidence that Plaintiff was a

consistently good worker who got along with taxpayers and her coworkers. Her problems began

when she identified and discussed substantial mistakes in the Tax Assessor's office, which

prompted Mr. Van Oudenhove to blame every conflict Plaintiff had with Ms. Knipple on the

Plaintiff. Although there is uncontradicted evidence that Plaintiff's problems started after Ms.

Knipple started to work for the Town and that Ms. Knipple continued to have problems with co-

workers after Plaintiff was terminated, Defendants' persist in claiming that Plaintiff was

terminated because of her inability to get along with Ms. Knipple. It is clear, however, that

Plaintiff was terminated in retaliation for identifying and discussing incompetence and

misconduct in the tax Assessor's office and that Plaintiff's conflict's with Ms. Knipple are

simply a pretext to justify Plaintiff's retaliatory termination.

44.    Admitted.

45.    Admitted.  The pre-termination letter does not, however, provide Plaintiff

with notice of any of the specific charges against her or any of the evidence that will be

presented supporting her termination.  Further, Mr. Sullivan admitted that he did not verbally

provide such information to Plaintiff. Instead, he directed her to clean out her desk before the so-

called hearing. The cursory form of the "notice" and Mr. Sullivan's instructions make manifest

the predetermined nature of the hearing.

46.    Admitted.

47.    Admitted.

48.    Admitted.

49.    Admitted.

50.    Admitted.

51.    Admitted.

52.    Admitted.

53.    Denied.  Plaintiff complained to the town on numerous occasions

regarding mismanagement, abuse of authority, or waste with the operation of the Assessor's

office.  (Levesque Aff. ¶¶ 5-6, attached hereto as Ex. B.)  Further, Plaintiff's contention is

supported by the fact that Mr. Van Oudenhove formally cautioned her for correcting his mistakes

and discussing those mistakes with others outside of the office.  (Van Oudenhove Memos at Ex.

L.)


B.    <u>Plaintiff's Local Rule 56 Statement of Disputed Facts.</u>

1.    At all times relevant to this complaint, Plaintiff performed at least competently in her

position. In addition, she completed assessment certification training and education courses paid

for by the Town that enhanced my job knowledge and skills. Further, she established and

maintained good working relationships with the members of the Board of Assessment Appeals,

other Town employees and taxpayers that came to the Assessor's office. (Plaintiff's Affidavit at

¶ 4; Korbusieski Depo. at 23, attached hereto as Ex. I)

2.     Plaintiff never had any trouble with any Town employees before Ms. Knipple began working in the Assessor's Office.  Before Ms. Knipple began working in the Assessor's Office, there were no complaints in Plaintiff's personnel file.  (Shaffer Depo. at 61; Sullivan Depo. at 23.) In fact, Peter Korbusieski, the Town Tax Collector whose work area shared space with the Assessor's office, characterized Plaintiff as a cooperative employee who got along very well with him and the employees in his office.  (Korbusieski Depo. at 23, attached hereto as Ex. I.)

3.     In connection with the diligent performance of her job duties, Plaintiff discovered errors that adversely affected tax payers' assessments, as well as the public fisc. For instance, she participated in an audit program that identified over one million dollars in additional taxable property for the Town. In addition, she found that a local restaurant had been under assessed by approximately $100,000, which would have cost the Town roughly $18,000 over a three (3) year period.  Over the course of my employment, she also cited other mishaps and violations of Town policies and procedures, which resulted in mistaken tax bills, and *inter alia* substantial lost taxation opportunities for the Town. (Plaintiff's Aff. ¶ 5)

4.     Plaintiff brought these and other issues to the attention of the Tax Assessor, Jack Van Oudenhove. Plaintiff also brought them to the attention of people outside the office, such as Town Counsel. In fact, the result of the audit was published in a local newspaper. (Plaintiff's Aff. ¶ 6; Newspaper Article at Ex. H)

5.     VanOudenhove was aware that Plaintiff discovered assessment mistakes and expressed her opinion regarding those problems with people outside the office. Accordingly, he sent me two memos: one directed me not to review my supervisors' work and the other instructed me that "[i]f mistakes are made, keep that within our office." (Van Oudenhove Memos at Ex. L)

6.      Despite Mr. Van Oudenhove's effort to stifle Plaintiff, the Town was aware of the mistakes being made in the Assessor's Office.  In response to those mistakes, the Town Administrator, Mr. Shaffer, monitored the performance of the Town Assessor, Mr. Van Oudenhove.  (Sullivan Depo. at 29, 63.)  Indeed, Mr. Shaffer indicated in his deposition that he "had been pounding on [Mr. Van Oudenhove] on performance issues for at least a year and a half."  (Shaffer Depo. at 70-74.)  For that reason, Mr. Van Oudenhove was denied a salary increase in the Spring of 2000 because of performance related reasons. (Shaffer Depo. at 58.)

7.      In or about December 1998, Laurie Knipple was appointed to the vacant Assessment Technician position. As a result of holding the same job title in the same office as Plaintiff, Ms. Knipple was similarly situated to Plaintiff. However, Ms. Knipple had no experience or education in the assessment field prior to her employment by the Town; moreover, she did not identify and discuss incompetence and mistakes in the tax Assessor's office. (Plaintiff's Aff. ¶ 9)

8.      Plaintiff assisted with Ms. Knipple's Assessment Technician training and her familiarization with the office's procedures. Despite her best efforts to work cooperatively with Ms. Knipple, there was considerable friction between them. (Plaintiff Aff. 10). Ms. Knipple, not Plaintiff, was responsible for the problems in the office, Ms. Knipple had problems with other employees in the office besides Plaintiff, and those problems persisted after Plaintiff was terminated.  (*See* Korbusieski Depo. at 26-29, 31, 40-42.)

9.      Whenever Mr. Van Oudenhove became aware of or involved in any conflict between Ms. Knipple and Plaintiff, he consistently blamed it on Plaintiff. In connection with her conflicts with Ms. Knipple, Mr. Van Oudenhove engaged in a retaliatory campaign to litter Plaintiff's file with memos blaming her for any and all problems in the office. Some of these memos included false and derogatory remarks about Plaintiff's work and her psychological well being. (Plaintiff's Aff.

¶ 11). In contrast Plaintiff's direct supervisor, Deputy Assessor Mr. Wheeler, wrote a very positive recommendation letter for Plaintiff and noted the "outstanding job" she had done in a memo to her personnel file. (September 20, 2000 Memo at Ex. S and November 20, 2000 Letter at Ex. Z.)

10.     Consistent with his efforts to retaliate against her, Plaintiff was denied her periodic step increase in pay in July 2000. In or about November 2000, Plaintiff grieved that denial and expressed her opinion that she was being subjected to abuse of authority in the form of "discriminatory conduct, unequal treatment and harassment". (Plaintiff Aff. ¶ 12)

11.     Thereafter, Mr. VanOudenhove wrote to Mr. Schaffer seeking job action against Plaintiff. In that correspondence, he made several false statements about Plaintiff, including *inter alia* that she suffered from a "persecution complex". (February 2, 2001 Memo at Ex. V.)

12.     On or about Thursday, March 8, 2001, Plaintiff was summoned to Mr. Sullivan's office where she was given a letter at approximately 4:30 p.m. The letter instructed her to attend a so-called "pre-termination meeting" at 5:00 p.m. that same evening. The letter advised Plaintiff that the Town was considering terminating her employment and that she would have an opportunity to present testimony and reasons why I should not be terminated. The letter did not, however, set forth any specific charges or any evidence that would be considered at the hearing. Not only was the letter silent with respect to prospective charges and evidence at issue, Mr. Sullivan did not provide any of that information to me orally. Instead, Mr. Sullivan advised me to remove my personal effects from my desk before attending the meeting, which clearly indicated the outcome of the meeting was predetermined. (Plaintiff Aff. ¶¶ 14-15; Sullivan Dep. at pp. 110-113; Shaffer Dep. at pp. 82-83, 86-89; Notification Letter at Ex. W.)

13.     Although Mr. Shaffer admitted Ms. Knipple's contribution to the conflicts with Plaintiff, and characterized them as "overblown histrionics", Ms. Knipple faced no discipline whatsoever. (Shaffer Dep. at pp. 32, 53, 68-69.)

14.     In light of the fact that Plaintiff was given the letter at the end of the work day, that it did not inform her of any evidence or charges, that she had less than an hour to prepare, and she had to clean out my desk during that time, Plaintiff had no meaningful opportunity to gather any evidence or formulate any opposition to the Defendants' charges. (Plaintiff Aff. ¶ 16).

15.     After packing her belongings, Plaintiff reported to the meeting at 5:00 p.m. on Thursday, March 8, 2001. The meeting was attended by Mr. Schaffer, Mr. VanOudenhove, Mr. Sullivan, and David Wheeler ("Wheeler"), the Assistant Assessor. The Administrative Assistant to the Mayor and Town Administrator, Nancy Herold ("Herold"), also attended and took notes. (Plaintiff Aff. ¶ 17)

16.     Mr. Schaffer stated the reason Plaintiff was being terminated was lack of cooperation. When Plaintiff asked in what way I had not cooperated, Mr. Wheeler stated that she refused to have cake at a birthday party for Ms. Knipple. When Plaintiff asked if there was anything else, Mr. Schaffer advised Mr. Wheeler that no further response was necessary. Failure to have a co-worker's birthday cake is not "good cause" for termination. (Plaintiff Aff. ¶ 18; Unemployment Statements at Ex. X and Y.)

17.     In response to Plaintiff's pleas to keep her job, Mr. Schaffer advised that he would meet with the Plaintiff the following Monday, March 12, 2001. He further remarked that it would take a "miracle" for Plaintiff to keep her job. Instead, he indicated that Plaintiff would be given the option to resign or be terminated. (Plaintiff Aff. ¶ 19)

18.     Following the meeting, taxpayers, Board of Assessment Appeals members, and several coworkers communicated their positive impressions and experiences with Plaintiff to Mr. Shaffer. In addition, thirteen of Plaintiff's co-workers signed a petition attesting to the fact that Plaintiff "was always very helpful and professional . . . Whenever a member of the public had to be referred to the Assessor's office, when staff needed information, [Plaintiff] . . . could be depended upon for an accurate and timely response."  (Petition, attached hereto as Ex. AA.) Patty Noblet, a member of the Board of Assessment Appeals, wrote that "[Plaintiff] manages to provide quality assistance in a friendly, accurate and timely manner.  My co-workers . . have [also] commented on how helpful and responsive she is.  My general observations of [Plaintiff] are that she is <u>always courteous, professional, and patient</u> with the public, and seems readily willing to assist in whatever is needed . . . [Plaintiff] is always working."  (Noblet Letter, dated March 10, 2001, attached hereto as Ex. BB.)  At the close of the five-paragraph letter, Ms. Noblet indicated to Mr. Shaffer her willingness to be contacted on the matter.  (Id.) Other co-workers and members of the public also wrote to Mr. Shaffer in support of Plaintiff.  They characterized her as "very cooperative . . . very polite, truthful, and . . . a dedicated worker," (Darico Letter, dated March 15, 2001, attached hereto as Ex. CC); "helpful, professional, and polite . . . patient and helpful," (Borysevicz Letter, dated March 16, 2001, attached hereto as Ex. DD); "courteous and professional . . . It has always been a pleasure dealing with her.  I will miss her . . . .," (McPartland Letter, dated March 20, 2001, attached hereto as Ex. EE); "one of the <u>most</u> courteous, professional and helpful people I have encountered . . . pleasant attitude, quick smile, extensive knowledge . . . and her respect for all town residents," (Jerhune Letter, dated April 11, 2001, attached hereto as Ex. FF).  (*See also* Warner Letter, dated March31, 2001;

Herold Letter, dated Nov. 9, 2000; Scofield & Pippin Letter, dated June 6, 1997, attached hereto as Ex. GG.)

19.     Mr. Shaffer admittedly disregarded all positive information regarding Plaintiff. (Shaffer Dep. at pp. 98-117.)

20.     On or about Monday, March 12, 2001, Plaintiff met with Mr. Schaffer, Mr. Sullivan and Ms. Herold were also present. There was no discussion about the basis for the termination decision. Instead, Mr. Schaffer showed Plaintiff two packets, one for termination and one for resignation. Plaintiff declined to resign and asked to keep her job. Mr. Schaffer advised Plaintiff that she could resign or be fired. When Plaintiff declined to resign, Mr. Schaffer formally terminated her employment with the Town effective March 23, 2001. (Plaintiff Aff. ¶ 21)

21.     Plaintiff appealed her termination through the Town's grievance procedure. In that connection, she met with Mr. Wheeler and Mr. Sullivan on or about March 20, 2001. Ultimately Plaintiff's appeal was decided by Mr. Shaffer, who had originally terminated her. Consistent with his conduct at the meetings on or about March 8th and 12th, Mr. Schaffer upheld Plaintiff's termination in a letter dated April 16, 2001. Upon receipt of this letter, Plaintiff's administrative appeals with the Town were exhausted and her termination was final. (Plaintiff Aff. ¶¶ 22-23)

                    PLAINTIFF,
                    MARYANNE LEVESQUE


                    By _____
                         Craig T. Dickinson  (CT 18053)
                    MADSEN, PRESTLEY & PARENTEAU, LLC
                    44 Capitol Ave. - Suite 201
                    Hartford, CT  06106
                    (860) 246-2466
                    (860) 246-1794
                    cdickinson@mppjustice.com

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing was sent by first class mail on this date to

the following counsel of record:

James Sconzo, Esq.
Kevin Brady, Esq.
Halloran & Sage, LLP
One Goodwin Square
225 Asylum Street
Hartford, CT 06103

_____

Craig T. Dickinson