## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | |
|---|---|
| **MARYANN LEVESQUE,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | :        No. 3:01CV1325(DJS) |
| | : |
| **THE TOWN OF VERNON, LAURENCE** | : |
| **R. SHAFFER in his individual** | : |
| **and official capacities, JOHN** | : |
| **VAN OUDENHOVE in his** | : |
| **individual and official** | : |
| **capacities, and DANIEL** | : |
| **SULLIVAN in his individual and** | : |
| **official capacities,** | : |
| | : |
| **Defendants.** | : |

### MEMORANDUM OF DECISION

Plaintiff Maryann Levesque, a former employee of the Town of Vernon, brings this 42 U.S.C. § 1983 action against defendants the Town of Vernon, Laurence R. Shaffer, John Van Oudenhove, and Daniel Sullivan.  Plaintiff alleges that defendants violated her constitutional rights to due process, free speech, and equal protection.  Plaintiff also asserts breach of contract against the Town of Vernon and brings claims for both deprivation of liberty and defamation against John Van Oudenhove. Defendants deny liability on all counts, assert the defense of qualified immunity, and move for summary judgment with respect to all counts of the complaint.  For the following reasons, defendants' motion (dkt. # 43) is **GRANTED in part** and **DENIED in part**.

## I.  FACTS

The employment relationship between plaintiff Maryanne Levesque ("Levesque") and the Town of Vernon ("the Town") commenced on August 7, 1995, when Levesque assumed a part-time clerical position in the Office of the Town Assessor ("Assessor's Office").  Plaintiff retained this position until April 15, 1996, when the Town promoted her to the full-time position of Assessment Technician.  After completing a nine-month probationary period, Levesque obtained permanent employment status.  During her employment with the Town, she participated in an effort to unionize assessment technicians and a well-publicized audit that identified over one million dollars in additional taxable property.

Defendants are employees of the Town of Vernon.  Defendant Laurence Shaffer is the Town Administrator.  Defendant John Van Oudenhove is the Assessor, and David Wheeler, who is not named as a defendant, is the Deputy Assessor.  Van Oudenhove and Wheeler were Levesque's immediate supervisors.  In 1999, Laura Knipple began working as an Assessment Technician.  Defendant Daniel Sullivan was the Town of Vernon Human Resources Director.

The terms of Levesque's employment were governed by the Charter of the Town of Vernon.  The Charter defines an "employee" as an individual who works at least twenty hours per week on a

regularly scheduled basis.  Levesque qualifies as an "employee" under the Charter because she was a full-time employee who worked thirty-five hours a week.  As such, Levesque was subject to the Charter's merit-based system.  Under this system, there are only three situations that give rise to termination:  (1) for cause; (2) because of a reduction in force due to necessary economics; or (3) because of the abolition or consolidation of positions by reorganization.  (See Dkt. # 44, Ex. 1, Ch. XIV, § 4, at 44). The process that must be followed when the Town terminates an employee is set forth in the Town of Vernon Personnel Rules and Regulations ("the Rules and Regulations").

On March 12, 2001, the Town dismissed Levesque from her classified civil service position for insubordination, uncooperative behavior, and leaving the office without permission.  Levesque denied these allegations and filed a grievance challenging her dismissal according to the procedures established by the Rules and Regulations.  Shaffer denied Levesque's grievance and upheld her termination by letter dated April 16, 2001.

The parties dispute the validity of Levesque's termination. Levesque contends that the Town did not terminate her for cause, but rather dismissed her because she participated in unionization efforts, brought problems in the Assessor's Office to the

-3-

public's attention, and declined to have cake with co-workers to celebrate another co-worker's birthday.

In support of these allegations, Levesque claims that she discovered errors in billing practices as well as violations of Town policies. She admits to bringing these items to the attention of her supervisor, Van Oudenhove, and to individuals outside the office, such as the Town Counsel. For example, Levesque found that a local restaurant was under-assessed by $100,000, and informed Van Oudenhove that certain bills should be amended to reflect the proper tax exemptions and refunds. Levesque contends that, in response to her divulging errors committed by the Assessor's Office, Van Oudenhove "engaged in a retaliatory campaign to litter my file with memos blaming me for all problems in the office." For instance, plaintiff offers a memorandum that Van Oudenhove sent her, dated February 8, 2000, which said, "if mistakes are made, keep that within our office."

Plaintiff further alleges that Van Oudenhove unfairly held her responsible for Levesque's intra-office conflicts with co-worker Knipple. Levesque contends that she never encountered difficulties with co-workers or supervisors until Knipple was appointed to the position of Assessment Technician in 1999. Plaintiff argues that both Knipple and the Town opposed her efforts to unionize Assessment Technicians and other clerical

-4-

employees and that Knipple was the source of disputes in the
Assessor's Office.

Plaintiff corroborates her assertions regarding Knipple with
testimony from the Collector of Revenue, Peter Korbusieski
("Korbusieski").  In his deposition, Korbusieski testified that
he and his staff worked in the same room with plaintiff and
Knipple.  He stated that plaintiff was a cooperative individual
who got along with members of his staff and said that he often
told Sullivan that Knipple was the source of the problems between
Levesque and Knipple.

Levesque further maintains that she performed her duties
competently throughout her employment with the Town.  She
supports this contention by offering documents written by her
immediate supervisor, Wheeler.  In September of 2000, Wheeler
placed a letter in plaintiff's file describing her work
performance as outstanding.   Wheeler also wrote a letter of
recommendation on plaintiff's behalf in November of 2000, in
which he said that she was "very knowledgeable in all aspects of
her job" and "shows positive initiative in the workplace."

Plaintiff also contends that she had good working
relationships with the Board of Assessment Appeals, Town
employees, and taxpayers.  She offers (1) a petition signed by
thirteen town employees that was submitted on her behalf after

-5-

she was terminated; (2) a letter written by Board of Assessment
Appeals member Patty Noblet, which opined that plaintiff was
helpful, cooperative, pleasant, and "provided backup in the
Assessor's office that no one else was able or willing to do;"
and (3) a collection of letters written by former Town employees
and individuals who had frequent contact with the Assessor's
Office, all of which describe plaintiff as a courteous and
helpful professional who provided taxpayers with accurate
information.

Defendants dispute Levesque's version of the events that
occurred during her tenure.  They contend that plaintiff
demonstrated personality problems early in her employment,
especially when interacting with Knipple, and that Levesque's
employment history consisted of disruptive behavior, which was
documented in multiple memoranda issued between 1999 and 2001.
These memoranda include:  (1) a letter of counseling dated June
10, 1999, from Van Oudenhove, to Levesque telling her not to
double-check the work of her supervisors and to follow policy
relating to taking early lunches, leaving work early, copying
papers on co-worker's desks, and walking away from supervisors;
(2) a letter dated June 15, 1999, from Sullivan to plaintiff
stating that she should discuss her absences with Van Oudenhove;
(3) a November 4, 1999 letter from Van Oudenhove to plaintiff

-6-

reprimanding her for being away from desk; and (4) a November 17, 1999 letter from Van Oudenhove to plaintiff reminding her that she is not employed in a supervisory capacity.  Defendants argue that these memoranda, as well as a November 17, 1999 memorandum from Sullivan to Van Oudenhove recommending that both Levesque and Knipple be referred to the Employee Assistance Program (EAP), show a long history of Levesque's unacceptable behavior at the workplace.

In addition to alleging that Levesque had difficulty getting along with co-workers, defendants claim that Levesque failed to adhere to office procedures.  They offer memoranda, issued between January and March 2000, directing plaintiff to follow instructions and advising plaintiff regarding overtime policy.  Defendants also offer a memorandum, dated April 18, 2000, from Van Oudenhove to plaintiff warning her to follow procedures or to be subject to disciplinary action.  Plaintiff challenged the validity of this April 18th memorandum by arguing in a grievance that there was a lack of procedural communication in the Assessor's Office regarding title transfers, the filing of license plate receipts, and office training.  Finance Officer and Treasurer James Luddecke conducted an investigation into this matter where he met separately with Van Oudenhove and Levesque.  Luddecke then issued a Response to Grievance Memo, dated May 5,

-7-

2000, where he concluded that (1) the Assessor will designate the individual responsible for title transfers; (2) the Assessor will execute a written procedure on the filing and assignment of numbers for license plate receipts; and (3) employees must openly discuss office procedures and follow instructions.

The parties also dispute the July, 2000 decision to deny plaintiff her periodic step increase in pay. Plaintiff challenged this decision by filing a grievance in November of 2000 and argued that she was the victim of "discriminatory conduct, unequal treatment and harassment." She said that it was not fair that Knipple received a raise when Knipple was the source of disputes within the Assessor's Office. On November 27, 2000, Shaffer denied this grievance, finding no evidence of discrimination. Plaintiff argued that Shaffer did not conduct a complete investigation and that Van Oudenhove denied her the step increase in retaliation for her complaints about Van Oudenhove's mistakes.

In light of the foregoing, and in contradiction to defendants' version of the events set forth herein, Levesque argues that her dismissal was unjustly predetermined as early as December of 2000. Van Oudenhove sent Shaffer a memorandum dated February 2, 2001, in which he said that Levesque suffers from a "persecution complex" and recommended that Levesque be

-8-

terminated.  Then, on February 23, 2001, Van Oudenhove sent Shaffer another memorandum wherein he recommended that Levesque be permanently removed because of her disruptive behavior, poor attitude, and failure to follow office policies.

Prior to her dismissal, plaintiff received a letter from Shaffer at approximately 4:30 p.m. on March 8, 2001.  The letter informed Levesque that she had a right to attend a "pre-termination hearing" at 5:00 p.m. that afternoon with Van Oudenhove, Wheeler, Sullivan, and Shaffer.  At this meeting, Shaffer stated that the Town was terminating her employment because of a lack of cooperation with her co-workers, and, according to plaintiff, Wheeler cited the fact that Levesque did not participate in a birthday celebration for Knipple as an example.  After the March 8th meeting, plaintiff asked if there was any way she could keep her job, and she scheduled a meeting with Shaffer on March 12, 2001.  At the March 12th meeting, plaintiff was presented with the option to resign or to be terminated.  A letter from Shaffer dated March 12, 2001 states that Levesque's employment was terminated.[1]

---

[1] A "Fact Finding Report," dated April 30, 2001, prepared by Sullivan states that "[t]he decision to discharge [Levesque] was made in December [2000], but was postponed until after the holidays."  Shaffer testified that he did not decide to terminate Levesque until March 12, 2001, and that he did not decide to terminate Levesque in December of 2000.

Plaintiff then appealed through the Town grievance procedure.  Pursuant to the grievance procedure, Levesque met with Wheeler and Sullivan on March 20, 2001, and requested reconsideration, in writing, from Van Oudenhove.  Wheeler and Van Oudenhove, in writing, rejected Levesque's request.  Levesque then appealed to Shaffer, who conducted a hearing on Levesque's grievance on April 10, 2001.  Ultimately, Shaffer upheld her termination in a letter dated April 16, 2001.

## II. DISCUSSION

Plaintiff brings this action pursuant to First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and Connecticut law.  Defendants move for summary judgment with respect to all counts of the complaint and raise qualified immunity as a defense.  Each claim is discussed in turn herein.

### A.  STANDARD

A motion for summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Summary judgment is appropriate if, after discovery, the nonmoving party "has failed to make a sufficient

showing on an essential element of [its] case with respect to
which [it] has the burden of proof." <u>Celotex Corp. v. Catrett</u>,
477 U.S. 317, 323 (1986).  "The burden is on the moving party 'to
demonstrate the absence of any material factual issue genuinely
in dispute.'" <u>American Int'l Group, Inc. v. London Am. Int'l
Corp.</u>, 664 F.2d 348, 351 (2d Cir. 1981) (quoting <u>Heyman v.
Commerce & Indus. Ins. Co.</u>, 524 F.2d 1317, 1319-20 (2d Cir.
1975)).  A dispute concerning a material fact is genuine "'if
evidence is such that a reasonable jury could return a verdict
for the nonmoving party.'" <u>Aldrich v. Randolph Cent. Sch. Dist.</u>,
963 F.2d 520, 523 (2d Cir. 1992) (quoting <u>Anderson v. Liberty
Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The court must view all
inferences and ambiguities in a light most favorable to the
nonmoving party. <u>See</u> <u>Bryant v. Maffucci</u>, 923 F.2d 979, 982 (2d
Cir. 1991).  "Only when reasonable minds could not differ as to
the import of the evidence is summary judgment proper." <u>Id</u>.

B. PROCEDURAL DUE PROCESS

Levesque claims that defendants violated the Due Process
Clause of the Fourteenth Amendment to the U.S. Constitution
because they did not provide meaningful notice of the pre-
termination hearing, had predetermined the result of her
pretermination hearing, and allowed Shaffer to terminate her
employment in violation of the Charter.  The due process analysis

-11-

requires a two-step inquiry.  The threshold issue is whether the
plaintiff has a property or liberty interest protected by the
Constitution.  The second step asks what process was due and
whether this constitutional minimum was in fact provided.
Narumanchi v. Board of Trustees of the Connecticut State
University, 850 F.2d 70, 72 (2d Cir. 1988).

### 1. Levesque's Property Interest

"Property interests are not created by the Constitution, but
rather 'they are created and their dimensions defined by existing
rules or understandings that stem from an independent source such
as state law-rules or understandings that secure certain benefits
and that support claims of entitlement to those benefits.'"
Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir.
2002)(quoting Board of Regents of State Colls. v. Roth, 408 U.S.
564, 577 (1972)).  "A public employee who has a right not to be
fired without "just cause" . . . has a property interest in her
employment that qualifies for the protections of procedural due
process." Otero v. Bridgeport Housing Authority, 297 F.3d 142,
151 (2d Cir. 2002) (internal quotation marks omitted).  Here,
Levesque was a permanent employee whose employment with the Town
of Vernon was governed by the procedures outlined in the Charter
and the Rules and Regulations.  As a town employee, Levesque
could only be dismissed for:  (1) cause; (2) because of a

-12-

reduction in force due to necessary economics; or (3) because of the abolition or consolidation of positions by reorganization. Thus, the terms of Levesque's employment with the Town afforded her a property interest.

### 2. The Process Due

Plaintiff contends that she did not receive meaningful notice of the pretermination hearing, that her dismissal was predetermined, and that Shaffer exceed his authority under the Charter when he terminated her employment. The Supreme Court has "described 'the root requirement' of the Due Process Clause as being 'that an individual be given an opportunity for a hearing before he is deprived of any significant property interest.' . . ." Cleveland Bd. Of Ed. V. Loudermill, 470 U.S. 532, 542 (1985)(quoting Boddie v. Connecticut, 401 U.S. 371, 379, (1971) (citations, footnote omitted)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." Id. Due process does not require an "elaborate" hearing, id. at 545, however, it "does require that before being terminated such an employee be given oral or written notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story." Otero, 297 F.3d at 151 (internal quotations omitted).

-13-

Genuine issues of material fact preclude the entry of summary judgment on Levesque's claim that the Town's pretermination procedures were constitutionally deficient. Defendants provided Levesque one half of an hour to prepare for the hearing, and the written notice of the hearing does not specify any reason for her termination.  Further, the reason Shaffer offered at the hearing itself, that Levesque was uncooperative, was difficult to refute without preparation. Although the record arguably contains ample documentation of her superiors' dissatisfaction with Levesque, defendants have not met their burden of demonstrating that no factfinder could deem their procedures deficient in this instance.

Plaintiff also contends that the pretermination hearing was a sham because the result was predetermined.  In support of this contention, Levesque offers Sullivan's remark that she should clean out her desk and Sullivan's statement in his "Fact Finding Report," dated April 30, 2001, that "[t]he decision to discharge [Levesque] was made in December [2000], but was postponed until after the holidays."  "Due process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen.  Otherwise, the 'opportunity to respond' required by Loudermill is no opportunity at all."  Ryan v. Illinois Dept. of Children and

-14-

<u>Family Services</u>, 185 F.3d 751, 762 (7th Cir. 1999); <u>see</u> <u>Wagner v.</u>
<u>City of Memphis</u>, 971 F. Supp. 308, 318-19 (W.D. Tenn. 1997)
(stating that, where the result of a pre-termination hearing had
been predetermined, "the concerns and goals of the pre-
termination hearing as set forth in <u>Loudermill</u> have not been
met.").

Levesque may be able to show that the result of the
pretermination hearing was pre-ordained.  Although Shaffer
testified that he decided to fire Levesque only after the meeting
on March 8th ended, Sullivan, in a sworn statement and in his
deposition testimony, stated that Shaffer had decided to
terminate Levesque's employment in December of 2000.  If the jury
credits Sullivan's testimony, the pretermination procedures
afforded to Levesque could run afoul of the Fourteenth Amendment.

Lastly, plaintiff argues that Shaffer, the Town
Administrator, did not have the legal authority to terminate her.
The Charter provides that

> [t]he Town Administrator shall be directly responsible
> to the Mayor for the following duties and for such
> other duties as the Mayor may assign: . . .Administer
> the merit system for classified employees, except as to
> appointments, discipline, suspension, or removal of
> employees.

(Dkt. # 44, Ex. 1, at 22-23).  Thus, plaintiff argues that
Shaffer's decision to terminate her violated her due process

-15-

rights because he did not have the authority to do so.

Defendants maintain that the Town of Vernon Personnel Rules and Regulations, which were adopted by the Vernon Town Council, expressly authorizes the Town Administrator to terminate employees.  (See Dkt. #44, Ex. 2, § 11.7).  Defendants, however, do not offer any support for the proposition that the Town Council has the authority to adopt rules and procedures that contradict the express terms of the Charter.[2]  Because the Charter is the fundamental source of the town officials' authority to act, see Fennell v. City of Hartford, 238 Conn. 809, 813-14 (1996), defendants have not met their burden of demonstrating that they are entitled to judgment as a matter of law on plaintiff's claim that Shaffer exceeded his authority when he terminated Levesque's employment.

The individual defendants raise the affirmative defense of qualified immunity.  "The doctrine of qualified immunity shields [government officials] acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively

---

[2] If the Rules and Regulations were a collective bargaining agreement between a union and the Town, this result may be different.  See Conn. Gen. Stat. § 7-474(f) (providing that the provisions of a CBA apply in the event such provisions conflict with the town charter).  Rather, the Rules and Regulations were a unilateral action by the Vernon Town Council.

-16-

reasonable official would have known." <u>Thomas v. Roach</u>, 165 F.3d
137, 142 (2d. Cir. 1999).

In <u>Saucier v. Katz</u>, 533 U.S. 194 (2001), the Supreme Court
established a three-step analysis for determining whether an
official is entitled to qualified immunity.  The first stage of
the qualified immunity inquiry asks whether the facts, taken in a
light most favorable to the party asserting an injury, could show
a constitutional violation. <u>Saucier</u>, 533 U.S. at 201, <u>Cowan v.
Breen</u>, 352 F.3d. 756, 760 (2d Cir. 2003).  The court next
determines "[w]hether the [constitutional] right was clearly
established." <u>Saucier,</u> 533 U.S. at 201.

The court analyzes the reasonableness of the official's
conduct in the third phase of the <u>Saucier</u> test.  "The relevant,
dispositive inquiry in determining whether a right is clearly
established is whether it would be clear to a reasonable officer
that his conduct was unlawful in the situation he confronted."
<u>Id</u>. at 202 (citations omitted). "If the officer's mistake as to
what the law requires is reasonable, however, the officer is
entitled to the immunity defense." <u>Id</u>. at 205. "Defendants will
not be immune, if, on an objective basis, it is obvious that no
reasonably competent officer would take the actions of the
defendant." <u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986).  If
"officers of reasonable competence could disagree," however, then

-17-

"immunity should be recognized." <u>Id</u>.

Defendants are not entitled to qualified immunity because Levesque could prove that their actions violated clearly established law.  Here, the law is clear that Levesque was entitled to adequate notice of her pretermination hearing, that defendants could not predetermine the result of this hearing, and that the Town Administrator lacked the authority to terminate her employment.  Defendants' motion is denied with respect to their affirmative defense.

### C. FIRST AMENDMENT RETALIATION CLAIM

Levesque claims that defendants terminated her employment in retaliation for her speaking out on matter of public concern in violation of the First Amendment to the U.S. Constitution.  She argues that her participation in a unionization endeavor and willingness to speak when she observed mistakes and billing errors in the Assessor's Office rendered her the target of a retaliatory campaign.

A public employer cannot discharge or retaliate against an employee for the exercise of his or her First Amendment rights. <u>Perry v. Sinderman</u>, 408 U.S. 593, 597 (1972).  Thus, in <u>Pickering v. Board of Education</u>, 391 U.S. 563 (1968), the Supreme Court struck a balance between the right of the employee to speak and the employer's interest in effectively conducting its affairs.

"The <u>Pickering</u> test involves a two-step inquiry: first, a court must determine whether the speech which led to an employee's discipline relates to a matter of public concern; and, second, if so, the balance between free speech concerns is weighed against efficient public service to ascertain to which the scale tips." <u>Melzer</u>, 336 F.3d at 193.

To succeed on her First Amendment claims, Levesque "must demonstrate by a preponderance of the evidence that the speech at issue was protected, that she suffered an adverse employment action, and there was a causal connection between the protected speech and the adverse employment action." <u>Blum v. Schlegal</u>, 18 F.3d 1005, 1010 (2d Cir. 1994). Thus, the threshold issue in this lawsuit is whether Levesque's speech relates to matters of public concern such that it is worthy of First Amendment protection.

"<u>Pickering</u>'s balancing test applies only when the employee speaks 'as a citizen upon matters of public concern' rather than 'as an employee upon matters only of personal interest.'" <u>Harman v. City of New York</u>, 140 F.3d 111, 117 (2d Cir. 1998) (quoting <u>Connick v. Myers</u>, 461 U.S. 138, 147 (1983)). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their

-19-

offices, without intrusive oversight by the judiciary in the name

of the First Amendment." <u>Connick</u>, 461 U.S. at 146.  As such,

> when a public employee speaks not as a citizen upon
> matters of public concern, but instead as an employee
> upon matters only of personal interest, absent the most
> unusual circumstances, a federal court is not the
> appropriate forum in which to review the wisdom of a
> personnel decision taken by a public agency allegedly
> in reaction to the employee's behavior.

<u>Id.</u> at 147.  "Whether an employee's speech addresses a matter of

public concern is a question of law for the court to decide,

taking into account the content, form, and context of a given

statement as revealed by the whole record."  <u>Lewis v. Cowen</u>, 165

F.3d 154, 163 (2d Cir. 1999).

Levesque argues that she spoke on matters of public concern

because she favored unionizing Assessment Technicians and

informed her superiors of instances of Van Oudenhove's refusal to

amend taxpayer bills.  Speech regarding union activity is, of

course, protected speech.  Levesque's speech regarding office

procedures and clerical mistakes, however, is not worthy of First

Amendment protection.

Levesque's speech regarding office procedures and clerical

mistakes is not protected by the First Amendment because she

spoke as an "employee upon matters only of personal interest."

<u>Connick</u>, 461 U.S. at 147.  "To presume that all matters which

transpire within a government office are of public concern would

-20-

mean that virtually every remark--and certainly every criticism directed at a public official--would plant the seed of a constitutional case." Id. at 149.  Levesque comments, that the Assessor failed to note a veteran's exemption, over-assessed a property owner, under-assessed another property owner, completed the Grand List late, and improperly claimed mileage for field work that had not been done, are ordinary job-related issues present, to some degree, in every workplace.  Although, in some instances, problems in a public workplace may be severe enough to warrant public attention, the matters about which Levesque has spoken are not unique or severe enough to be of importance to the public at large.  See Nichol v. ARIN Intermediate Unit 28, 268 F. Supp. 2d 536, 558 (W.D. Pa. 2003) ("On the other side of the public concern coin [from comments upon matters outside the issues of the workplace], and presenting more complexity, are employees' comments directed internally at issues in or affecting the workplace, ranging from idle office gossip and chit-chat (usually not public concern speech) to comments about safety, performance, corruption and other such larger issues of general interest to the public (usually deemed to be matters of public concern).").

Even though Levesque's speech concerning unionization of clerical employees is protected speech, she cannot, as a matter

-21-

of law, establish a causal connection to her termination.

Plaintiff offers no evidence of her participation in unionization

drives other than her involvement in the 1997 AFSCME endeavor.

The record does not contain any reference to Levesque's

unionization activity beyond Levesque's own conclusory assertion

that Van Oudenhove held her activity against her.  Therefore,

defendants' motion is granted with respect to this claim and her

identical claim brought pursuant to Section 31-51q of the

Connecticut General Statutes.

### D.  EQUAL PROTECTION

Levesque argues that defendants violated her right to equal

protection under the law by treating her differently than her co-

workers.  Essentially, plaintiff contends that she and Laura

Knipple, who was also employed as an assessment technician, were

similarly situated individuals who were treated differently.

This disparate treatment, plaintiff alleges, occurred when the

Town decided to terminate Levesque for uncooperative behavior.

Levesque argues that both she and Knipple had participated in the

various conflicts between 1999 and 2001 and that there was no

rational reason to terminate her and not terminate Knipple.

The Fourteenth Amendment to the United States Constitution

provides that "no state shall . . . deny to any person within its

jurisdiction the equal protection of the laws," and is

"essentially a direction that all persons similarly situated should be treated alike."  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432 (1985).  Traditionally, equal protection claims were premised on the idea that the plaintiff was a member of a protected class.  The United States Supreme Court has recently held, however, that a plaintiff need not be a member of a traditionally "protected class" in order to allege an equal protection violation.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).  Instead, a "class of one" may maintain an equal protection claim, as long as the plaintiff alleges that he or she was treated differently than similarly situated persons.  See id.  In addition, the plaintiff must show that the different treatment was intentional and had no rational basis in order to properly allege an equal protection violation.  See, e.g., Ricketts v. City of Hartford, 74 F.3d 1397, 1407 (2d Cir. 1996).[3]  A government official's decision "can be considered irrational only when [the official] acts with no legitimate reason for [his or her] decision."  Harlen Associates v. The

---

[3] Prior to Olech, the Court of Appeals also required the plaintiff to show malice or bad faith on the part of the defendant in a selective treatment case.  See Giordano v. City of New York, 274 F.3d 740, 751 (2d Cir. 2001).  In light of Olech, however, it is unclear whether intentional conduct may be sufficient alone to satisfy an equal protection claim.  See id. For the purpose of deciding this motion, the court assumes that intentional conduct is sufficient to state an equal protection claim.

Incorporated Village of Mineola, 273 F.3d 494, 500 (2d Cir. 2001)
(internal quotation marks omitted).

Plaintiff argues that defendants intentionally treated her
differently than Knipple.  Plaintiff offers testimony from the
Collector of Revenue, Peter Korbusieski, to support her
allegation that Knipple contributed to disruptions in the
Assessor's Office.  She also relies upon her written responses to
her supervisors' reprimands in which she opines that Van
Oudenhove always took Knipple's side.  Levesque also cites the
fact that Knipple received a step increase in pay when she did
not.

Defendants contend that plaintiff's evidence cannot, as a
matter of law, establish a violation of the Equal Protection
Clause.  They counter that both Knipple and plaintiff were
referred to employee assistance, that plaintiff refused to attend
these sessions when she learned that she could not tape them, and
that plaintiff received several memoranda between 1999 and 2001
warning her about cooperating with co-workers.  Defendants argue
that Levesque was not singled out and that she was also
terminated for failing to follow instructions and leaving the
office without permission.

Levesque's claim fails for two reasons.  First, the
undisputed record reveals that the basis for Levesque's

-24-

termination was not her inability to work cooperatively with
Knipple only, but rather Levesque's inability to work
cooperatively with others, including Van Oudenhove, the Assessor.
Although Levesque disputes the cause and substance of her
disputes with Van Oudenhove, which is relevant to the second
construction of her equal protection claim discussed below, there
is no genuine issue of fact that there were indeed disputes.
Therefore, the fact that Levesque's supervisor believed that
Levesque was uncooperative when working with him is a rational
basis to treat Levesque differently than Knipple.

Second, to the extent Levesque alleges that defendants
violated the Equal Protection Clause not by making an *irrational*
decision but by making an *impermissible* decision, her claim also
fails.  The Court of Appeals for the Second Circuit has recently
distinguished between selective prosecution equal protection
claims and Olech equal protection claims, and has held that the
former claim "coalesces" with a First Amendment retaliation claim
when the plaintiff alleges that the defendant's motivation for
the irrational treatment of the plaintiff is retaliatory.  See,
e.g., Cobb v. Pozzi, 363 F.3d 89, 110-11 (2d Cir. 2004); African
Trade & Information Center, Inc. v. Abromaitis, 294 F.3d 355, 363
(2d Cir. 2002).  Here, Levesque claims that "Defendants singled
Plaintiff out for unfair and illegal treatment, up to and

including Plaintiff's termination, due to Plaintiff's exercise of protected constitutional rights." (Compl., ¶ 57). Although the substance and cause of Levesque's disputes with Van Oudenhove are relevant to his claim, Levesque's selective prosecution equal protection claim fails because it is derivative of her First Amendment retaliation claim, which, as discussed herein fails as a matter of law.

E.   DEPRIVATION OF LIBERTY CLAIM AGAINST VAN OUDENHOVE

Levesque alleges that Van Oudenhove infringed upon her Fourteenth Amendment right to liberty by stating that she "appears to have a persecution complex," (Dkt. # 52, Ex. V), and cannot perform daily work duties. These statements appeared in a memorandum that Van Oudenhove sent to Shaffer, dated February 2, 2001. Levesque argues that Van Oudenhove's statements stigmatized her and infringed upon her reputation and right to be employed.

The Fourteenth Amendment's right to liberty includes the freedom "to engage in any of the common occupations of life." Meyer v. Nebraska, 262 U.S. 390, 399 (1923). "[T]he 'liberty' interest protected by the due process clause includes in certain circumstances the right to contest at a hearing public, stigmatizing governmental accusations that impose a substantial disability." O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d

-26-

Cir. 1994).  Therefore, "the protections of the Fourteenth
Amendment are available whenever the state, in terminating an
individual's employment, makes charges against him that will
seriously impair his ability to take advantage of other
employment opportunities."  Huntley v. Community School Bd. of
Brooklyn, 543 F.2d 979, 985 (2d Cir. 1976).

A plaintiff seeking to establish deprivation of his or her
liberty interest without due process of law must meet the
"stigma-plus" standard, which "refers to a claim brought for
injury to one's reputation (the stigma) coupled with the
deprivation of some 'tangible interest' or property right (the
plus), without adequate process."  DiBlasio v. Novello, 344 F.3d
292, 302 (2d Cir. 2003).  Specifically, a plaintiff must

> establish 1) that [he or she was] defamed; and 2) that
> the defamation occurred in the course of the
> termination of governmental employment or was coupled
> with a deprivation of a legal right or status. . . .
> To show defamation, the plaintiff[] must show that the
> statements complained of were false; that they
> stigmatized the plaintiff[]; and that they were
> publicized.

Abramson v. Pataki, 278 F.3d 93, 101-02 (2d Cir. 2002); Morris v.
Lindau, 196 F.3d 102, 114 (2d Cir. 1999) ("For a government
employee, a federal cause of action for deprivation of a liberty
interest arises when the alleged defamation occurs in the course
of some negative alteration of the employee's status, such as

-27-

dismissal or refusal to rehire.").

Van Oudenhove argues that he is entitled to judgment as a matter of law on this claim because Levesque cannot prove that his statement was made public and that Levesque cannot prove that her prospects for future employment have been compromised. Issues of material fact, however, preclude entry of judgment as a matter of law on this claim.  With respect to Van Oudenhove's first argument, the court is unable to discern from the record whether Van Oudenhove's statement was "placed in the discharged employee's personnel file and are likely to be disclosed to potential employers."  Brandt v. Bd. of Cooperative Educational Services, 820 F.2d 41, 43 (2d Cir. 1987).  Van Oudenhove has not met his burden of demonstrating that Levesque could not possibly prove that the public could have access to the statements at issue.  Regarding his second argument, again, Levesque may be able to prove to a jury that her employment prospects have been significantly damaged by Van Oudenhove's statements despite the fact that she was able to secure employment.

Having found that Levesque could prove a constitutional violation, the court now concludes that Van Oudenhove is not entitled to qualified immunity.  Should a jury adopt Levesque's version of the facts, Van Oudenhove's actions violated clearly established law.  For these reasons, Van Oudenhove's motion is

-28-

denied as it pertains to this claim.

### F. DEFAMATION CLAIM AGAINST VAN OUDENHOVE

Plaintiff also brings a common law defamation claim against Van Oudenhove under Connecticut law.  Van Oudenhove argues that he is entitled to summary judgment on this claim because Levesque cannot prove that his statements were not privileged.

The Connecticut Supreme Court has defined a defamatory statements as "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Cweklinsky v. Mobil Chemical Co., 267 Conn. 210, 217 (2004).  To establish a prima facie case of defamation, the plaintiff must demonstrate that: (1) the statement at issue was defamatory; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published; and (4) the plaintiff's reputation suffered injury as a result of the statement.  See id.  Furthermore, for a claim of defamation to be actionable, the statement must be false.  See id. at 228-29.  The determination of the truthfulness of a statement is a question of fact for the jury. Id. at 229.

Van Oudenhove claims that his allegedly defamatory statements are privileged.  The Connecticut Supreme Court has stated that

-29-

"There are two facets to the defense of privilege.  The
occasion must be one of privilege, and the privilege must
not be abused. Whether the occasion is one of privilege is a
question of law. . . . [W]hether the privilege was abused
... depends upon whether there was malice in fact . . . in
uttering and broadcasting the alleged defamatory matter."

Torosyan v. Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn.

1, 28 (1995) (quoting Charles Parker Co. v. Silver City Crystal

Co., 142 Conn. 605, 615 (1955)).  Because Van Oudenhove's

statements to Shaffer were made in the context of evaluating and

managing personnel, they are privileged.  See id. at 29.

Despite the fact that Van Oudenhove's statements are

privileged, Van Oudenhove's motion must be denied because he

cannot demonstrate that Levesque is unable to prove that he

abused the privilege.  The privilege is abrogated in this context

if the defendant made the statement with "actual malice--that is,

with knowledge of its falsity or reckless disregard as to its

truth."  Id.  Levesque could prove that Van Oudenhove abrogated

his privilege by presenting evidence that Van Oudenhove acted

with malice.  As such, Van Oudenhove's motion is denied with

respect to this claim.

G. WHISTLEBLOWER CLAIM

Defendants claim that the statute of limitations set forth

in Section 31-51m(c) of the Connecticut General Statutes, which

prohibits retaliation against a "whistleblower," bars Levesque's

-30-

claims against them.  Section 31-51m(c) provides that

> [a]ny employee who is discharged, disciplined or
> otherwise penalized by his employer in violation of the
> provisions of subsection (b) may, after exhausting all
> available administrative remedies, bring a civil
> action, within ninety days of the date of the final
> administrative determination or within ninety days of
> such violation. . . .

Conn. Gen. Stat. § 31-51m(c).  Shaffer denied Levesque's

grievance on April 16, 2001.  Defendants claim that because

Levesque served the Town and Sullivan on July 18, 2001, Van

Oudenhove on July 23, 2001, and Shaffer on July 30, 2001,

Levesque commenced her civil action beyond the 90-day time period

set forth in Section 31-51m, which expired on July 16, 2001.

Levesque argues that her action should be deemed commenced

on the date she filed her complaint, July 13, 2001, pursuant to

Rule 3 of the Federal Rules of Civil Procedure.  Levesque's

whistleblower claim is before this court under the authority

conferred by 28 U.S.C. § 1367, which permits the court to

exercise subject matter jurisdiction over claims related to the

claims over which the court has original jurisdiction.  As

another judge in this district has persuasively stated,

> [i]t is well settled that in Connecticut (unless
> otherwise specified by the legislature) a case is
> considered "brought" for purposes of a statute of
> limitations on the date of service of the complaint
> upon the defendant and that, in a federal diversity
> action, such state rules control and not Fed. R. Civ.
> P. 3. . . .  Courts have also applied such state rules

-31-

> in the context of state law claims brought under the
> district court's supplemental jurisdiction, . . . as
> consistent with the Supreme Court's reasoning in <u>Walker
> v. Armco Steel Corp.</u>, 446 U.S. 740, 753 [](1980). . . .

<u>Kotec v. Japanese Educational Institute of N.Y.</u>, 321 F. Supp. 2d

428, 431 (D. Conn. 2004).  As noted by the court in <u>Kotec</u>, the

Supreme Court has observed the following:

> There is simply no reason why, in the absence of a
> controlling federal rule, an action based on state law
> which concededly would be barred in the state courts by
> the state statute of limitations should proceed through
> litigation to judgment in federal court solely because
> of the fortuity that there is diversity of citizenship
> between the litigants.

<u>Id.</u> (quoting <u>Walker v. Armco Steel Corp.</u>, 446 U.S. 740, 753

(1980)).  Therefore, Levesque commenced her whistleblower claim

after July 16, 2001, and defendants' motion for summary judgment

is granted with respect to this claim.

H. BREACH OF CONTRACT

Defendants argue that, because they terminated Levesque's

employment for cause, they did not breach the terms of her

employment contract.  Whether a contract has been breached is a

question for the trier of fact.  Defendants have not demonstrated

that Levesque could not possibly prevail on this claim, and their

motion is denied with respect to this claim.

### III.   CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment (dkt. # 43) is **GRANTED in part** and **DENIED in part.**  Judgment shall enter in favor of the defendants on Counts Two, Three, Four, and Five of the Complaint.  The parties shall submit a joint trial memorandum on or before **October 29, 2004.**

**IT IS SO ORDERED** at Hartford, Connecticut, this 30th day of September, 2004.


                              /s/DJS
                    _____
                         DOMINIC J. SQUATRITO
                    UNITED STATES DISTRICT JUDGE