IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

MARYANNE LEVESQUE,
    Plaintiff,               :     CIVIL ACTION
                                             NO. 3-01-CV-1325 (DJS)

V.                            :

TOWN OF VERNON, LAURENCE R.    :
SCHAFFER, JOHN VAN OUDENHOVE
and DANIEL SULLIVAN,
    Defendants.           :     OCTOBER 15, 2004

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION

James M. Sconzo, Esq.
CT Fed. Bar No. 04571
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
Email:    sconzo@halloran-sage.com

Counsel for Defendants,
Laurence Schaffer, Jon Van Oudenhove,
Daniel Sullivan and the Town of Vernon

## TABLE OF CONTENTS

**PAGE**

BACKGROUND ................................................................................................ 1

I.    THE OCTOBER 1, 2004 RULING .......................................................... 1

II.   THE PLAINTIFF'S OPPOSITION TO THE MOTION
      FOR SUMMARY JUDGMENT............................................................ 3

STANDARD OF REVIEW .............................................................................. 4

ARGUMENT ................................................................................................... 4

I.    THE COURT OVERLOOKED THE LAW GOVERNING
      DUE PROCESS CLAIMS AND THE QUALIFIED IMMUNITY DEFENSE..... 4

      A.    The Requirements Of The Due Process Clause........................... 5

      B.    Qualified Immunity:  General Principles..................................... 6

      C.    The Court's Analysis Of The Due Process Claim
            And Qualified Immunity Defense Was In Error.......................... 9

            1.    The Plaintiff's Advance Warning
                  Theory Is Without Merit.................................................. 9

            2.    The Plaintiff's Legal Authority or Ultra Vires
                  Theory Is Without Merit................................................ 11

            3.    The Court Erred In Its Analysis Of The
                  Plaintiff's Preordained Theory....................................... 15

II.   THE COURT OVERLOOKED THE STANDARD
      GOVERNING SUMMARY JUDGMENT AND ITS RULING
      ON THE DEPRIVATION OF LIBERTY CLAIM
      CONSTITUTES ERROR UNDER THAT STANDARD ...................... 17

      A.    The Elements Of The Deprivation Of Liberty Claim ................. 17

      B.    The Proper Standard Governing Summary Judgment
            Under Fed. R. Civ. P. 56............................................................ 18

      C.    The Court Erred In Its Application Of The Standard
            Of Review Governing Summary Judgment Motions................... 20

III.    THE COURT OVERLOOKED THE LAW GOVERNING
        THE QUALIFIED IMMUNITY DEFENSE AND ITS
        RULING ON THE DEPRIVATION OF LIBERTY
        CLAIM CONSTITUTES ERROR ............................................................... 21

CONCLUSION............................................................................................................. 24

The defendants, the Town of Vernon, Laurence R. Schaffer, John Van Oudenhove and Daniel Sullivan submit this memorandum of law in support of their motion for reconsideration of the Court's memorandum decision filed on October 1, 2004 ("October 1 Ruling"). For the reasons set forth below, the Court should grant the defendants' motion and enter summary judgment in the manner requested below.[1]

## BACKGROUND

### I.    THE OCTOBER 1, 2004 RULING

By its October 1 Ruling, the Court granted summary judgment on the plaintiff's claims for first amendment retaliation, retaliation under Conn. Gen. Stat. § 31-51q, violation of the Equal Protection Clause of the Fourteenth Amendment and violation of Conn. Gen. Stat. § 31-51m. (10/1/04 Ruling, at 22, 26, 32) Consequently, it ordered the entry of a judgment in favor of the defendants on Counts Two through Five of the complaint. (Id. at 33) The October 1 Ruling denied the defendants' motion for summary judgment on the plaintiff's claims for violation of the Due Process Clause of the Fourteenth Amendment, deprivation of liberty under the Fourteenth Amendment, defamation and breach of contract. (Id. at 18, 28-30, 32)

As part of its analysis, the Court concluded that the plaintiff could support her due process claim on the theory that she was not given "adequate notice" of the convening of her pretermination hearing on March 8, 2001. (Id. at 14, 18) The Court noted that the reason offered at the meeting for the plaintiff's termination, uncooperative behavior, was difficult to refute "without preparation." (Id. at 14)

---

[1]    The discussion of the facts and the arguments in this memorandum are, consistent with Fed. R. Civ. P. 56, set forth in a manner that interprets the facts in the light most favorable to the plaintiff. The defendants do not concede these facts and reserve the right to challenge them at trial, if necessary.

As part of its analysis of the plaintiff's due process claim, the Court also agreed with the plaintiff's argument that she could support her claim on the theory that "Shaffer's decision to terminate her violated her due process rights because he did not have the authority to do so." (10/1/04 Ruling, at 15-16) It rejected the defendants' argument that the "Town of Personnel Rules and Regulations, which were adopted by the Vernon Town Council, expressly authorizes the Town Administrator to terminate employees." (Id. at 16) In support of its conclusion, the Court noted that: (1) the defendants had not submitted any support for the proposition that the Town Council had the authority to adopt rules and regulations that contradict the Town Charter and (2) the defendants had "not met their burden" on summary judgment because "the Charter is the fundamental source of the town officials' authority to act." (Id. (citing Fennell v. City of Hartford, 238 Conn. 809, 813-14 (1996))

In connection with the plaintiff's theory that her due process rights were violated because the result of her pretermination hearing was "pre-ordained," the Court stated that "Due Process requires that, prior to termination, an employee be given the chance to tell her side of the story, and that the agency be willing to listen. Otherwise, the 'opportunity to respond' required by Loudermill is no opportunity at all." (Id. at 14 (internal quotation marks omitted)) It cited a Seventh Circuit decision and a decision from the Western District of Tennessee in support of this statement. (Id. at 14-15 (citing Ryan v. Illinois Dep't. of Children & Family Servs., 185 F.3d 751, 762 (7th Cir. 1999); Wagner v. City of Memphis, 971 F.Supp. 308, 318-19 (W.D. Tenn. 1997))

With regard to the defendants' qualified immunity defense to the due process claim, the Court held that the

> [d]efendants are not entitled to qualified immunity because
> Levesque could prove that their actions violated clearly established

2

> law. Here, the law is clear that Levesque was entitled to adequate
> notice of her pretermination hearing, that defendants could not
> predetermine the result of this hearing, and that the Town
> Administrator lacked the authority to terminate her employment.

(Id. at 17-18)

With regard to the plaintiff's deprivation of liberty claim, the Court held that "Van Oudenhove has not met his burden of demonstrating that Levesque could not possibly prove that the public could have access to the statements at issue." (Id. at 28) Moreover, in connection with its holding the Court noted that "Levesque may be able to prove to a jury that her employment prospects have been significantly damaged by Van Oudenhove's statements despite the fact that she was able to secure employment." (10/1/04 Ruling, at 28) As part of its analysis of the deprivation of liberty claim, the Court relied on Brandt v. Bd. of Cooperative Educational Serv., 820 F.2d 41 (2d Cir. 1987). With regard to Van Oudenhove's qualified immunity defense, the Court held that "[s]hould a jury adopt Levesque's version of the facts, Van Oudenhove's actions violated clearly established law." (Id.)

## II.   THE PLAINTIFF'S OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT

A review of the plaintiff's April 15, 2004 memorandum of law reveals that she relied exclusively on Bartlett v. Krause, 209 Conn. 352 (1988), as authority for the proposition that the "timing" of the notice, in and of itself, can support a claim for violation of the Due Process Clause. (Pl.'s 4/15/04 Mem. of Law, at 15-20) With regard to her theory that an alleged exercise of authority in contravention of a town charter by a public official regardless of whether the requisite procedures are followed can, in and of itself, support a due process claim, the plaintiff cited Fennell. (Pl.'s 4/15/04 Mem. of Law, at 20-22)

With regard to her deprivation of liberty claim and the alleged adverse impact on her ability to obtain employment, the plaintiff argued that "if" the allegations at issue were disclosed they would "undoubtedly... deprive [her] of job opportunities." (Pl.'s 4/15/04 Mem. of Law, at 34) This argument constituted the plaintiff's entire submission on this element of her claim. Based on the argument, she contended that a question of fact existed. (Id. at 37) With regard to the publication element necessary to establish her deprivation of liberty claim, the plaintiff maintained, without any evidentiary submission, that the statements had been placed in her personnel file and that if that fact was denied by the defendants, an issue of fact existed. (Id. at 37-38)

## STANDARD OF REVIEW

The reconsideration of a ruling is appropriate when there is an intervening change in the controlling law, new evidence, or the need to correct a clear error of law or to prevent a manifest injustice. United Technologies Corp. v. American Home Assur. Co., 237 F.Supp. 2d 168, 170-71 (D. Conn. 2001); Rubin v. Hirschfeld, 2001 WL 34152407, at *1 (D. Conn. Nov. 8, 2001). It is also appropriate where the court has overlooked case law or other matters. See United States v. All Assets of Blue Chip Coffee, Inc., 882 F.Supp. 45, 46 (E.D.N.Y. 1995).

## ARGUMENT

### I.    THE COURT OVERLOOKED THE LAW GOVERNING DUE PROCESS CLAIMS AND THE QUALIFIED IMMUNITY DEFENSE

The Court's ruling is based on a misunderstanding of what procedures are mandated by the Due Process Clause in the pretermination context. A review of those requirements reveals that the federal constitution does not require that an employee be given an advance warning of a pretermination meeting. Nor does the fact that a public official may have acted beyond his authority as defined in a town charter, in and of itself, constitute a violation of the procedures

4

guaranteed by the Due Process Clause. Finally, the fact that a termination decision may have been made prior to a pretermination hearing does not establish a violation of the Due Process Clause.

### A.   The Requirements Of The Due Process Clause

In Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532 (1985), the Supreme Court held that when a state has created a property interest in employment, the "process" by which a decision to terminate that employment is made must satisfy the requirements of procedural due process under the Fourteenth Amendment. The essential requirements of due process are notice and an opportunity to respond. Id. at 546. In Loudermill, the Court held that some form of pretermination hearing is required, id. at 542, but that process "need not be elaborate" and it does not have to approach the level of a "full adversarial evidentiary hearing." Id. at 545. See Otero v. Bridgeport Housing Auth., 297 F.3d 142, 151 (2d Cir. 2002). Thus, the Court recognized that an employee facing termination "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Loudermill, 470 U.S. at 545. See Otero, 297 F.3d at 151. A hearing does not have to precede the termination decision, but only must precede the termination of benefits. Larson v. City of Fergus Falls, 229 F.3d 692, 697 (8th Cir. 2000).

The "standards of the Supreme Court delineated in Loudermill for pretermination hearings are not very stringent…." West v. Grand County, 967 F.2d 362, 368 (10th Cir. 1992). The pretermination process is merely the employee's chance to clarify the most basic understandings or to convince the employer that termination is unwarranted. Powell v. MiKulecky, 891 F.2d 1454, 1458 (10th Cir. 1989). "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken

decisions -- essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." Loudermill, 470 U.S. at 545-46.

The pretermination process is intended to supplement, not duplicate, the more elaborate post-termination hearing. Powell, 891 F.2d at 1458. For example, under the standard articulated in Loudermill, an employer is not required to provide the employee all the details of the charges. Larson, 229 F.3d at 697. Nor is the employer required to provide the employee with an investigative report or the names of co-workers who have made allegations against the employee. See Collyer v. Darling, 98 F.3d 211, 224 (6th Cir. 1997). Loudermill does not require that employers act as government prosecutors and disclose every piece of relevant evidence to the employee whether or not he requests it. Leftwich v. Bevilacqua, 635 F.Supp. 238, 241 (W.D. Va. 1986). Thus, the notice or explanation requirement is satisfied with only limited information being provided to an employee prior to the termination. See Larsen, 229 F.3d at 697-98.

### B.    Qualified Immunity:  General Principles

Although the October 1 Ruling included a discussion of the qualified immunity doctrine, it did not apply all three components of the doctrine. It merely stated, without the requisite analysis, that the law was "clear" and denied summary judgment under the qualified immunity doctrine. (10/1/04 Ruling, at 18) Moreover, the ruling did not discuss the recognized sources for determining whether a constitutional right is "clearly established." Accordingly, a complete discussion of the qualified immunity doctrine is appropriate.

Qualified immunity is more than a simple defense - it is "an entitlement not to stand trial or face the other burdens of litigation,...an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to

go to trial." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985). The question of qualified immunity

is an issue to be decided as a matter of law by the court. <u>Warren v. Dwyer</u>, 906 F.2d 70, 76 (2d

Cir. 1990). See <u>Mendoza v. Block</u>, 27 F.3d 1357, 1360 (9th Cir. 1994) (pure question of law).

In a case with multiple defendants, the court must conduct an individual analysis of the qualified

immunity defense as to each defendant.

In <u>Saucier v. Katz</u>, the Supreme Court ruled that the "requisites of a qualified immunity

defense must be considered in proper sequence." 533 U.S. 194, 200 (2001). See <u>Ehrlich v.</u>

<u>Town of Glastonbury</u>, 348 F.3d 48, 54-55 (2d Cir. 2003). That sequence requires consideration

as a threshold matter the question of whether the officials conduct violated a constitutional right.

<u>Saucier</u>, 533 U.S. at 201. "This must be the initial inquiry." <u>Id.</u> In setting forth the sequence

approach to qualified immunity, the Supreme Court "speaks in mandatory terms -- lower courts

*must* determine the violation before engaging in a qualified immunity analysis." <u>Ehrlich</u>, 348

F.3d at 55 (emphasis original).

In determining whether the violation of a constitutional right has been alleged, the

validity of the qualified immunity analysis "depends substantially upon the level of generality at

which the relevant 'legal rule' is to be identified." <u>Anderson v. Creighton</u>, 483 U.S. 635, 639

(1987). See <u>International Action Ctr. v. United States</u>, 365 F.3d 20, 25 (D.C. Cir. 2004). Thus,

at the first stage of the inquiry, courts must not define the relevant constitutional right in overly

general terms, less they strip the qualified immunity defense of all meaning. <u>International</u>

<u>Action</u>, 365 F.3d at 25. For example, it does no good to allege that a public official violated the

right to free speech, and then conclude that the right to free speech has been "clearly established"

in this country since 1791. <u>Id.</u> Instead courts must define the right "to a degree that would allow

officials reasonably to anticipate when their conduct may give rise to liability for damages." Id. (citation, internal quotations and brackets omitted).

If a violation is established, "the next, sequential step is to ask whether the right was clearly established." Saucier, 533 U.S. at 201. The Second Circuit recently described the process of determining whether a right was "clearly established" in Huminski v. Corsones, 2004 WL 2248175, at *27 (2d Cir. Oct. 7, 2004). In that case, the court recognized that a right is "clearly established" if its "'contours...[are] sufficiently clear that a reasonable official would understand what he is doing violates that right.'" Id. (quoting Anderson, 483 U.S. at 640). "'This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'" Id. That is the right must be defined with "reasonable specificity." Id. (citation and internal quotation marks omitted). "In performing this analysis, [courts within the Second Circuit] look to the established law of the Supreme Court and of [the Second Circuit] at the time of the defendants' actions." Id. See Anobile v. Pelligrino, 303 F.3d 107, 125-26 (2d Cir. 2002).

Under the final step of the analysis, even if a plaintiff demonstrates that a defendant violated a clearly established law, a defendant is entitled to qualified immunity if a reasonable official could have believed that his actions were lawful in light of clearly established law and the circumstances confronting him. Poe v. Leonard, 282 F.3d 123, 146 (2d Cir. 2002). A defendant is therefore entitled to summary judgment on qualified immunity grounds, if a jury, viewing all facts in the light most favorable to the plaintiff, could conclude that officials of reasonable competence could disagree on the legality of the defendant's actions. Id. When the facts are not in dispute, the issue of whether an official acted reasonably should be determined by

the court on a motion for summary judgment. Id. A district court errs by "not conducting the legal inquiry necessitated by the defense of qualified immunity, which requires that a court determine whether under the plaintiff's version of the facts, reasonable officers in the defendant's position could disagree as to the legality of his actions." Id.

C.    **The Court's Analysis Of The Due Process Claim And Qualified Immunity Defense Was In Error**

The First Count of the plaintiff's complaint alleges that she was denied due process because the defendants failed to provide her with "adequate notice of the charge against her [and] a meaningful opportunity to be heard prior to her termination." (Compl., Count One, ¶ 44) There is no claim that the plaintiff's due process rights were violated because the Town Administrator did not have the authority under the Town Charter to terminate her. Nor is there a claim that her rights were violated because the result of her pretermination hearing was preordained. As demonstrated below, the Court's analysis of those two claims as well as the plaintiff's claim that her due process rights were violated because she was only given thirty minutes advance warning of the meeting was in error. Accordingly, the Court should reconsider its ruling on these three issues and enter summary judgment in favor of the defendants on them.

1.    **The Plaintiff's Advance Warning Theory Is Without Merit**

The Court's analysis of the plaintiff's advance warning theory is misplaced. As demonstrated above, the Due Process Clause does not require that an employee receive a certain amount of advance warning that a pretermination hearing will be occurring. Under the Fourteenth Amendment, a public employee "is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. Loudermill, 470 U.S. at 546. "To require more than this prior to the termination would intrude to an unwarranted extent on the government's interest in quickly removing an

9

unsatisfactory employee." Id. There is no constitutional right to receive a certain amount of advance warning that a pretermination hearing is about to take place. Thus, the Court's reference to the plaintiff needing time to prepare a response to or rebut the charges is misplaced. (10/1/04 Ruling, at 14)  The Due Process Clause only requires that during a pretermination hearing, the plaintiff be given an opportunity to provide her side of the story in response to the charges.[2]  A pretermination hearing is not an adversarial, evidentiary hearing. The plaintiff was not entitled to an opportunity either call witnesses or to prove that the charges were incorrect. That is part of the post-termination process. Thus, there is no constitutional right to receive more than a thirty minute warning that a pretermination hearing is going to be held. Accordingly, the Court should have entered summary judgment on this theory.

Even if there was a right under the Fourteenth Amendment to receive an advance warning of a pretermination hearing, that right was not clearly established on March 8, 2001. The Court did not identify either a United States Supreme Court or Second Circuit decision that recognizes such a right. Instead, the Court held that the law was "clear" without engaging in any of the requisite analysis. (10/1/04 Ruling, at 18)  That holding was in error. Under the second prong of the qualified immunity test, summary judgment should have been entered in this case.

Moreover, even assuming arguendo that such a right exists and that it was clearly established on March 8, 2001, the defendants' conduct in this case, giving thirty minutes advance notice of the meeting, was objectively reasonable. That is to say, at a minimum, public officials

---

[2] /      The plaintiff's reliance on Bartlett is misplaced. It acknowledged that there "are times when no more is required than notice and an opportunity to present reasons, …, why the proposed action should not be taken." 209 Conn. at 377. Bartlett required more "because of the absolute lack, …, of any post-termination procedures at the administrative level wholly unlike Loudermill." Id.

could disagree whether it was reasonable. As such, qualified immunity applies under the third prong of the test and summary judgment should be entered.

Moreover, the foregoing analysis must be applied by the Court to each individual defendant. Qualified immunity cannot be dealt with in general terms. It is submitted that at least some of the three individual defendants are protected by qualified immunity from this theory of liability. See Al-Jundi v. Estate of Nelson Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)(defendant must be "personally involved" in the constitutional violation in order to establish a § 1983 claim).

### 2.     The Plaintiff's Legal Authority or Ultra Vires Theory Is Without Merit

The Court's analysis of the plaintiff's legal authority or ultra vires theory was in error. (10/1/04 Ruling, at 15-16) At the outset, the Court's analysis of the Town Charter is incomplete. It does not identify, assuming that the Town Administrator did not have the authority, which official had the authority to terminate an employee. A review of the Town Charter, a copy of which was submitted as Exhibit 1 to the Defendants' motion, reveals that Chapter X, Section 3 provides the Mayor with the authority to remove employees. (Ex. 1, at 18)[3] It also provides that the Mayor "may, at any time, delegate to the Town Administrator, the Mayor's appointive and removal authority set forth in this Section." (Id.) Section 6 of Chapter XI provides that the Town Administrator shall be responsible for "such other duties" as assigned to him by the Mayor and shall "[r]ecommend personnel action to the Mayor." (Id. at 22-23) Under the Town Charter, the Town Administrator is one of the administrative officers who are "responsible to the Mayor." (Id. at 18-20) In fact, he is recommended for the position by the Mayor, (id. at 20), and is

---

[3]     Citations to exhibits are to the exhibits submitted in support of the defendants' motion for summary judgment.

11

"directly responsible to the Mayor." (Id. at 22) The October 1 Ruling fails to address these provisions.

Moreover, the ruling fails to substantively address the express authority vested in the Town Administrator by the Personnel Rules and Regulations adopted by the Town Council. (Ex. 2, at 29) The Personnel Rules and Regulations were expressly "designed to give effect to the Town Charter." (Ex. 2, at iv) Under the Town Charter, Vernon's Mayor is the presiding officer of the Town Council. (Ex. 1, at 8) The plaintiff produced no analysis in support of her legal authority or ultra vires theory. Instead, she relied exclusively on a selective quote from the Town Charter. The October 1 Ruling relied on that quote. The Court's conclusion was in error. A thorough review of the Town Charter and the Personnel Rules and Regulations demonstrates that the Town Administrator had the authority to terminate the plaintiff's employment. Accordingly, the Court should reconsider its ruling on this issue and enter summary judgment in favor of the defendants on it.

Furthermore, both the Court's and the plaintiff's citation to Fennell was misplaced. That decision does not recognize a cause of action under the Due Process Clause. In particular, Fennell does not hold that a municipal employee has a cause of action under the federal constitution under the circumstances at issue in this case. The guarantees of the Due Process Clause, as articulated by Loudermill, are very specific. They do not establish a cause of action based upon technicalities; the failure to comply with which inflicts no injury. See Bishop v. Wood, 426 U.S. 341, 349-50 (1976).

In point of fact, Fennell supports the entry of summary judgment on the plaintiff's legal authority or ultra vires theory. In the portion of the Fennell decision cited by this Court, the Connecticut Supreme Court addressed the plaintiffs' argument that a pension manual created an

implied contract. 238 Conn. at 814. The court disagreed with the plaintiff's argument. It noted that courts "have consistently refused to give effect to government-fostered expectations that, had they arisen in the private sector, might well have formed the basis for a contract or estoppel." Id. at 816 (internal quotation marks omitted). The Fennell court also recognized that it is a general rule that whatever acts public officials may do or authorize to be done in the first instance may subsequently be adopted or ratified by them with the same effect as though properly done under previous authority. Id. at 818. In the instant case, the plaintiff produced no evidence that her termination was not authorized or ratified by the town. As such, she failed to meet her burden under Fed. R. Civ. P. 56. Celotex Corp. v. Catrett, 477 U.S. 317, 322-25 (1986). Accordingly, summary judgment should be entered in favor of the defendants on this theory.

In fact, it is well-established that random and unauthorized acts do not violate procedural due process when the government provides a remedy subsequent to the alleged deprivation. See Hudson v. Palmer, 468 U.S. 517, 531-32 (1984). Here, it is undisputed that the plaintiff had post-termination appeals available to her and that she pursued those appeals. Thus, to the extent that the plaintiff bases her due process claim on a theory that her termination was unauthorized, that theory fails as a matter of law. See McKinney v. Pate, 20 F.3d 1550, 1562-63 (11th Cir. 1994)(en banc)(cited by plaintiff); Birmingham v. Ogden, 70 F. Supp. 2d 353, 370 (S.D.N.Y. 1999)(same). See also Parrott v. Taylor, 451 U.S. 527, 541 (1981), overruled on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

As demonstrated above, the defendants' conduct in this did not violate the terms of Vernon's charter. Accordingly, the Court should have granted summary judgment on this theory because it does not allege a constitutional claim. See Wilson v. Layne, 526 U.S. 603, 609 (1999)

("A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all.'").

Even if the Court disagrees with the foregoing analysis, summary judgment should have been entered under the second prong of the qualified immunity test. In particular, any constitutional right was not clearly established on March 8, 2001. The October 1 Ruling fails to identify a United States Supreme Court or Second Circuit decision that recognizes such a right, let alone defines the elements of the cause of action. Instead, it concluded that the law was "clear" without any citation to authority. (10/1/04 Ruling, at 18) That holding is in error. Absent the recognition of the right by the appropriate courts, prior to the events at issue, the right is not clearly established. Accordingly, summary judgment should be entered on this issue.

Even assuming for the sake of argument that the right was clearly established on March 8, 2001, given the language in the Town Charter allowing the Mayor to delegate authority and the authority vested in the Town administrator by the Town Council's adoption of the Personnel Rules and Regulations, the defendants' conduct was "objectively reasonable." Thus, under the third prong of the qualified immunity test, summary judgment should have been entered on this theory. The October 1 Ruling did not address the third prong of the test. In this case, at a minimum, reasonable officials could at least disagree about the Town Administrator's authority. Thus, the defendants' conduct was objectively reasonable and qualified immunity applies.

Moreover, in a case involving multiple defendants, the qualified immunity analysis must be individualized. The October 1 Ruling does not apply the qualified immunity analysis to each individual defendant, but instead makes a sweeping conclusion. Such an analysis is misplaced. In the instant case, in addition to the foregoing analysis, at a minimum, there is no basis for

holding Van Oudenhove and Sullivan liable under the theory. Their conduct was objectively

reasonable given the terms of the Town Charter authority granted by the Town Council.

### 3. The Court Erred In Its Analysis Of The Plaintiff's Preordained Theory

The Court's conclusion that the plaintiff may be able to maintain her due process claim

on a theory that the result of the pretermination hearing was preordained was also in error.

(10/1/04 Ruling, at 15) Even assuming for the purposes of this motion that a termination

decision was made prior to the pretermination hearing, it does not constitute a violation of the

Due Process Clause. Larson, 229 F.3d at 696-97. See O'Neill v. Baker, 210 F.3d 41, 49 (1st

Cir. 2000). As the Eighth Circuit recognized in Larson, the "hearing does not have to precede

the termination decision, but only must precede the termination of benefits." 229 F.3d at 607

(citation and internal quotation marks omitted). Similarly, in O'Neill, the First Circuit

recognized that "[t]here was no constitutional infirmity because the planned termination was

subject to revision if [the plaintiff] was able to contest the validity of the grounds for termination.

Instituting termination proceedings and preparing the necessary documentation in advance of the

final termination hearing are not deprivations of due process rights." 210 F.3d at 49. Here, it is

undisputed that a hearing occurred prior to the termination of benefits. (10/1/04 Ruling, at 9)

Accordingly, summary judgment should have been entered for the defendants on this theory.

Ryan and Wagner, which were cited by the Court, support this conclusion. In Ryan, the

Seventh Circuit, consistent with the First and Eighth Circuits, acknowledged that "[t]hat at the

start of the hearing the agency decisionmakers tentatively believe the employee should be

removed does not raise a constitutional problem -- indeed, it would be surprising if the employee

were brought up on charges warranting termination absent such a belief -- so long as the

decisionmakers are open to other views." 185 F.3d at 762. The Ryan court reversed the entry of

summary judgment because the plaintiffs introduced evidence that the hearing was a sham.  Id.

That evidence included on investigator's testimony that the decisionmakers were involved in "an

effort to go after the plaintiffs and terminate them regardless of the evidence."  Id.

Similarly, in Wagner, after a bench trial, the district court found that the evidence

submitted by the plaintiff established the outcome of the hearing was "predetermined regardless

of the proof presented."  971 F.Supp. at 319.  This factual finding was supported by testimony at

the trial.  Id. at 317.

In the instant case, even viewing the evidence in the light most favorable to the plaintiff,

there is no evidence that the defendants were not willing to listen to the plaintiff's responses or

that the plaintiff was going to be terminated regardless of what she said.  Nor has the plaintiff

produced any evidence that any pre-hearing decision was irreversible.  As discussed in detail

below, in order for the plaintiff's preordained or sham theory to survive summary judgment

under Rule 56, she had the burden to produce such evidence.  See Celotex, 477 U.S. at 322-23.

The only evidence produced by the plaintiff merely reveals that a decision may have been made

prior to the hearing.  As demonstrated above, that evidence is insufficient to establish a

constitutional violation.

Even assuming arguendo that the Court disagrees with the foregoing analysis, summary

judgment on the plaintiff's preordained theory is appropriate under the second prong of the

qualified immunity test.  Specifically, neither the Court nor the plaintiff has cited either a United

States Supreme Court or Second Circuit decision which recognized prior to March 8, 2001, that

the making of a termination decision prior to a hearing, in and of itself, violates the Due Process

Clause.  Absent such a decision, the right, assuming one exists, was not clearly established.

Accordingly, the defendants are entitled to summary judgment on the plaintiff's preordained or sham theory.

The defendants are also entitled to summary judgment under the third prong of the qualified immunity test. Specifically, as a matter of law, reasonable officials could have disagreed on the propriety of making of a termination decision prior to a hearing. This is particularly so given the case law discussed above. As such, the defendants' conduct was "objectively reasonable" as a matter of law. Accordingly, the Court should enter summary judgment in favor of the defendants on this theory.

## II. THE COURT OVERLOOKED THE STANDARD GOVERNING SUMMARY JUDGMENT AND ITS RULING ON THE DEPRIVATION OF LIBERTY CLAIM CONSTITUTES ERROR UNDER THAT STANDARD

### A. The Elements Of The Deprivation Of Liberty Claim

As the Court recognized at page 27 of the October 1 Ruling, a plaintiff seeking to establish deprivation of his or her liberty interest without due process of law must meet the "stigma-plus" standard, which "refers to a claim brought for injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus), without adequate process." (10/1/04 Ruling at 27 (quoting <u>DiBlasio v. Novello</u>, 344 F.3d 292, 302 (2d Cir. 2003)) Specifically, *a plaintiff must*

> *establish* 1) that [he or she was] defamed; and 2) that the defamation occurred in the course of the termination of governmental employment or was coupled with a deprivation of a legal right or status….To show defamation, the *plaintiff[] must show* that the statements complained of were false; that they stigmatized the plaintiff[]; and that they were publicized.

<u>Id.</u> (quoting <u>Abramson v. Pataki</u>, 278 F.3d 93, 101-02 (2d Cir. 2002) (emphasis added)).

Accordingly, the burden of proof is on the plaintiff.

Moreover, as part of the October 1 Ruling, the Court relied upon Brandt. In Brandt, the Second Circuit recognized that in determining the degree of dissemination that satisfies the "public disclosure" requirement, courts "must look to the potential effect of dissemination on the employee's standing in the community and the foreclosure of job opportunities." 820 F.2d at 44. Thus, "what is sufficient to constitute 'public disclosure' will vary with the circumstances of each case." Id. In remanding the case, the Brandt court noted that if the plaintiff was unable to show that "prospective employers are likely to gain access to his personnel file and decide not to hire him, then the presence of the charges in his file has a damaging effect on his job opportunities." Id. at 45. Thus, on remand, the plaintiff had to "substantiate his contention that [his employer was] likely to make his personnel file available to prospective employers." Id. at 46. It was "[o]nly if he [wa]s able to prove a likelihood of future disclosure" that the plaintiff would be entitled to relief. Id.

**B.    The Proper Standard Governing Summary Judgment Under Fed. R. Civ. P. 56**

As demonstrated below, the Court's application of the standard governing motions for summary judgment under Rule 56 to the deprivation of liberty claim was in error. Accordingly, a discussion of the standard is appropriate.

In Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the Court examined the standard for summary judgment under Rule 56. It recognized that the "plain language of Rule 56(c) *mandates* the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all

other facts immaterial." Id. at 322-23 (emphasis added). The moving party only bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact. Id. at 323. There is, however, no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. Id. Accordingly, the moving party is entitled to summary judgment when the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Id. [4]

Celotex expressly distinguished Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). Celotex 477 U.S. at 325. It explained that Adickes should not be construed to mean that the burden is on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the non-moving party bears the burden of proof. Id. Instead, the Celotex Court recognized that the "burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the non-moving party's case." Id. Finally, the Court emphasized the important rights conferred upon parties by Rule 56. Specifically, it held that "Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the

---

[4]    Thus, "as to issues on which the non-moving party bears the burden of proof, the moving party may simply point out the absence of evidence to support the nonmoving party's case." Nora Beverages, Inc. v. Perrier Group of America, Inc., 164 F.3d 736, 742 (2d Cir. 1998).

manner provided by the rule, prior to trial, that the claims and defenses have no factual basis."
Id. at 327.

"[C]onclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." Bayway Refining Co. v. Oxygenated Marketing & Trading A.G., 215 F.3d 219, 224 (2d Cir. 2000). Thus, the non-moving party may not rest upon mere allegations or denials of the moving party's pleadings, but instead must set forth "specific facts" showing that there is a genuine issue for trial. Perrelli v. City of East Haven, 2004 WL 1202718, at *1 (D. Conn. May 28, 2004) (citing Fed. R. Civ. P. 56(e)). If the non-moving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Lamay v. Town of Bloomfield, 62 F.Supp.2d 583, 588 (D.Conn. 1999).

### C. The Court Erred In Its Application Of The Standard Of Review Governing Summary Judgment Motions

A review of the Court's analysis of the deprivation of liberty claim reveals that the analysis was in error. The Court held that Van Oudenhove had not met "his burden" of demonstrating that the public could not possibly have access to the statements. (10/1/04 Ruling, at 28) The Court also noted that the plaintiff might be able to demonstrate that her employment prospects have been significantly damaged despite her obtaining employment. (Id.) Under Brandt, Celotex and Rule 56, these holdings are in error. In opposing the motion for summary judgment, it was the plaintiff's burden to produce evidence regarding: (1) the actual presence of the statements in her personnel file, (2) the likelihood of the public obtaining access to her file and (3) the damage to her ability to obtain employment. A review of the plaintiff's April 15, 2004 memorandum of law reveals that she produced no such evidence. Instead, she relies upon two conclusory statements by her counsel. For example, she maintains, through her counsel, that the statements are in her personnel file and that "undoubtedly" their presence will deprive her of

job opportunities. (Pl's. 4/15/04 Mem. of Law, at 34)  She produces no evidence to support the

factual statements in her memorandum of law and does not address how the protection afforded

personnel files under Conn. Gen. Stat. § 31-128f will be circumvented.[5]  Absent the production

of evidence in support of her claim, the plaintiff failed to satisfy her burden under Rule 56 and

Van Oudenhove is entitled to summary judgment.  See Abramson, 278 F.3d at 101 (quoting

Celotex and affirming entry of summary judgment); Baden v. Koch, 799 F.2d 825, 830-31 (2d

Cir. 1986)(nothing in record showed that plaintiff could not obtain employment); Esposito v.

Metro-North Commuter R.R. Co., 856 F.Supp. 799, 808 (S.D.N.Y. 1994)(granting summary

judgment because plaintiff's evidence did not establish that he was foreclosed from employment

by alleged stigma).

In order to preserve the record, the defendants note that they disagree with and challenge

the Second Circuit's conclusion that the placement of alleged statements in a personnel file

satisfies the publication element.  Because there is no evidence of any publication of the

statements at issue, judgment as a matter of law should be entered in favor of Van Oudenhove on

this claim.  See Johnson v. Martin, 943 F.2d 15, 16-17 (7th Cir. 1991) (recognizing that Brandt is

inconsistent with Supreme Court precedent).

## III.    THE COURT OVERLOOKED THE LAW GOVERNING THE QUALIFIED IMMUNITY DEFENSE AND ITS RULING ON THE DEPRIVATION OF LIBERTY CLAIM CONSTITUTES ERROR

The Court's analysis of the qualified immunity doctrine in connection with the

deprivation of liberty claim against Van Oudenhove was incomplete and in error.  (10/1/04

Ruling, at 28)

---

[5]/    Section 31-128f provides for the confidentiality of personnel files under Connecticut law.

At the outset, the Court's conclusion that the plaintiff could prove a constitutional violation is misplaced. (Id.) As the Court recognized, the statements that the plaintiff takes issue with amounted to claims that she could not perform daily work duties and that she "'appears to have a persecution complex.'" (Id. at 26) As a matter of law, these statements do not support a claim for deprivation of liberty under the Fourteenth Amendment. The Second Circuit has recognized that "[n]ot every alleged derogatory statement about an employee who loses her job imposes sufficient stigma to implicate the liberty interest and to require a name-clearing hearing." O'Neill v. City of Auburn, 23 F.3d 685, 691 (2d Cir. 1994). The stigmatization giving rise to a cause of action "require[s] 'something greater than a charge of failure to perform a particular job, *lying within the employee's power to correct.*'" Id. (citation omitted, emphasis original). For example, in O'Neill, the Second Circuit held that statements that an employee had a "poor relationship" with state agencies, that his work was not "up to par" and was "sloppy" were not stigmatizing because they described problems within the employee's power to correct. Id. See Wojcik v. Massachusetts State Lottery Comm., 300 F.3d 92, 103 (1st Cir. 2002). In the instant case, the statements at issue, (Pl.'s 4/15/04 Mem. of Law, at 34-35), are in the same category and do not support a constitutional claim. They describe matters within the plaintiff's control. (Id. at 35 ("self-induced problems")) Thus, the plaintiff has not alleged and cannot prove a constitutional claim. Accordingly, Van Oudenhove is entitled to qualified immunity under the first prong of the doctrine.

Van Oudenhove is also entitled to qualified immunity under the doctrine's first prong because the plaintiff has failed to either allege (Compl., Count Seven), or establish (Pl.'s 4/15/04 Mem. of Law, at 33-37), an essential element of a deprivation of liberty claim. That element was overlooked in the Court's analysis. (10/1/04, Ruling, at 26-28) Specifically, in order to establish

such a claim, a plaintiff "must" prove that her governmental employer "improperly refused to grant h[er] a post-removal opportunity to refute the false charges that led to h[er] removal." Baden v. Koch, 799 F.2d 825, 830 (2d Cir. 1986). See Wojcik, 300 F.3d at 103 (describing five elements, including "government must have failed to comply with the employee's request for an adequate name-clearing opportunity."). "The purpose of the [name-clearing] hearing is only to allow the employee to clear his name of the false charges' compliance with formal procedures is not necessarily required." Wojcik, 300 F.3d at 103. Here, the plaintiff has failed to establish this essential element. Her complaint does not allege that she either requested or was denied a name-clearing hearing. In fact, it is undisputed that she was provided with post-termination hearings. (10/1/04 Ruling, at 10) A through review of the plaintiff's April 15, 2004 memorandum of law reveals that she is asserting a defamation claim and not a constitutional violation. (Pl.'s 4/15/04 Mem. of Law, at 33-37) Thus, qualified immunity applies.

Moreover, the plaintiff's deprivation of liberty claim fails under the first prong of the qualified immunity test because she has asserted it against an inappropriate defendant. The plaintiff has not explained how Van Oudenhove, who was a supervisor, (Compl., ¶ 5), could have provided or denied a post-termination name-clearing hearing. See Al-Jundi, 885 F.2d at1065 (personal involvement required). Thus, the plaintiff has failed to assert a constitutional violation and Van Oudenhove is entitled to qualified immunity under the first prong of the test.

Van Oudenhove is also entitled to qualified immunity under the second prong of the qualified immunity test. Specifically, if the Court concludes that the plaintiff is entitled to assert her deprivation of liberty claim without establishing the requisite elements discussed above, than it is recognizing a new right that was not clearly established on March 8, 2001. As such, Van Oudenhove would be entitled to qualified immunity.

Finally, Van Oudenhove is also entitled to qualified immunity under the third prong of the qualified immunity test. Specifically, as a matter of law, at a minimum, reasonable officials could have disagreed on the propriety of the alleged comments. This is particularly so given the case law discussed above. Public employers do not violate the constitution by evaluating an employee's work. As such, the defendants' conduct was "objectively reasonable" as a matter of law. Accordingly, the Court should enter summary judgment in favor of Van Oudenhove on this claim.

**CONCLUSION**

For the foregoing reasons, the Court should grant the defendants' motion for reconsideration and enter summary judgment in favor of the defendants on the claims and theories analyzed above. The defendants reserve the right to challenge the other aspects of the October 1 Ruling during the course of the trial, if the Court elects to exercise supplemental jurisdiction over the remaining state law claims.

Respectfully submitted,

**LAURENCE SCHAFFER, JOHN VAN OUDENHOVE, DANIEL SULLIVAN and the TOWN OF VERNON**

By _____
James M. Sconzo, Esq.
CT Fed. Bar No. 04571
**HALLORAN & SAGE LLP**
One Goodwin Square
225 Asylum Street
Hartford, CT 06103
Tel. No.: (860) 522-6103
Fax No.: (860) 548-0006
Email : sconzo@halloran-sage.com

Their Attorney

## CERTIFICATION

This is to certify that on this 15th day of October, 2004, I caused the foregoing to be served via U.S. Mail, postpaid, to:

Craig T. Dickinson, Esq.
Madsen, Prestley & Parenteau, LLC
44 Capitol Avenue, Suite 201
Hartford, CT 06106

James M. Sconzo